**SEVEN ELVES, INCORPORATED,**
**Plaintiff–Appellee,**

v.

**Jack S. ESKENAZI, Esko Industries,**
**Inc., et al., Defendants,**

**Gary Liebman and Jack Riback,**
**Defendants–Appellants.**

**No. 79–2845.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 26, 1981.

Larry Wayne Gabriel, Los Angeles, Cal., Steven K. DeWolf, Houston, Tex., for defendants–appellants.

Will Gray, Houston, Tex., for plaintiff appellee.

Before INGRAHAM, GEE and TATE, Circuit Judges.

TATE, Circuit Judge:

This is an appeal from an order denying the appellants' motion to vacate a judgment in damages for malicious prosecution and slander. The judgment was entered in a proceeding at which the appellants did not appear, either personally or through an attorney. Their motion to vacate was brought under Fed.R.Civ.P. 55(c) (setting aside default judgment) and 60(b) (relief from judgment), and was denied by the district court without written reasons. Because we find merit in the appellants' contentions under Rule 60(b), we vacate the challenged order and the judgment entered below. The cause is remanded to the district court for trial on the merits.

*Facts*

In 1975, Seven Elves, Inc., owed the appellants Liebman and Riback some $800. When attempts to collect the debt proved unsuccessful, Liebman and Riback joined with Jack Eskenazi and others in filing an involuntary bankruptcy petition against Seven Elves. Liebman and Riback executed a power -of--attorney authorizing Eskenazi to act as their agent in retaining counsel and in prosecuting the bankruptcy cause, but did not themselves participate directly in that action. The bankruptcy proceeding ended in a judgment in favor of Seven Elves.

Subsequently, Seven Elves brought this action in diversity, seeking to recover $250,-000 in damages from the petitioners in the prior bankruptcy proceeding on grounds of malicious prosecution and slander. Liebman and Riback, as well as the other defendants below, retained Charles F. Fitzgerald, a California attorney, to defend them in this action. Fitzgerald was one of the attorneys representing the petitioners in the previous bankruptcy proceeding. Through Fitzgerald, Liebman and Riback answered Seven Elves' complaint, and discovery was commenced. A pretrial conference was held on September 23, 1977, with Fitzgerald appearing for the defendants, and the case was scheduled for docket call on September 1, 1978.

In October of 1977, the business offices of Liebman and Riback were destroyed by fire. A change of address form was filed with the appropriate United States Post Office, and mail addressed to the gutted business offices was forwarded to Riback's home address for approximately six months thereafter. It does not appear that Liebman and Riback directly informed Fitzgerald of this change of address.

On November 28, 1977, Liebman and Riback were deposed by Seven Elves' attorney in Fitzgerald's presence. During the course of those depositions, the fact that the business offices had been totally destroyed and the home mailing addresses of both Liebman and Riback were elicited. Following the depositions, Fitzgerald informed Liebman and Riback that he would keep them informed of any progress in this action, and that no further action on their part would be required unless and until he contacted them. Neither Liebman nor Riback ever communicated with Fitzgerald again.

On December 9, 1977, Fitzgerald and Jack Eskenazi had words. As a result, Eskenazi "fired" Fitzgerald and demanded the return of all his client files, including those pertaining to the present action. Fitzgerald complied, advising Eskenazi to retain new counsel for the defendants in this cause. Because Eskenazi had acted as the agent of Liebman and Riback in the prior bankruptcy action, had paid all Fitzgerald's legal fees in both the prior action and the present one, and had been Fitzgerald's primary contact with the defendants in the present action, Fitzgerald assumed that Eskenazi was acting on behalf of all of the defendants. For this reason, Fitzgerald considered his representation of the defendants, including Liebman and Riback, terminated. Assuming that Eskenazi would inform the defendants of the termination, Fitzgerald did not at any time inform either Liebman or Riback that he no longer represented them, nor did he advise them to retain other counsel. In the ensuing months, Fitzgerald made several attempts to insure that Eskenazi would retain substitute counsel of record for the defendants in the present action, and even attempted to assist Eskenazi in that effort. However, no new counsel was retained, and Liebman and Riback remained unaware of these events.

Around August 20, 1978, the trial court became aware of Fitzgerald's desire to be replaced as counsel of record for the defendants. On September 11, 1978, Fitzgerald wrote the trial judge to explain the difficulties that had arisen, and to inform the court that he did not intend to appear in this action. The court notified Fitzgerald that he would have to appear personally to request that the court relieve him as counsel of record for all defendants. The court mailed Fitzgerald the appropriate notice of trial, with instructions to forward this notice to all defendants. Fitzgerald mailed copies of this notice to the gutted business offices of Liebman and Riback. This notice was not received by Liebman and Riback, and was not returned to Fitzgerald.

Fitzgerald never appeared before the court, and was never relieved as attorney of record for the defendants. On October 2, 1978, the case was called for trial. Neither Fitzgerald nor any of the defendants (including Liebman and Riback) was present. The defendants failing to appear, Seven Elves moved that their pleadings be stricken and that default judgment be entered in favor of the plaintiffs. Both motions were granted, and evidence was taken as to the amount of damages. At the close of the evidence, damages were set at $250,000. The judgment, along with findings of fact and conclusions of law, were drafted by Seven Elves' attorneys and signed by the trial judge.

No notice of application for a default judgment was served upon Fitzgerald or any defendant, as is required by Fed.R. Civ.P. 55(b)(2). Liebman and Riback remained ignorant of the judgment against them until March 23, 1979, when they were ordered to show cause why a writ of execution should not issue. They immediately retained other counsel, and on April 3, 1979, timely filed their motion to set aside the default judgment under the provisions of Fed.R.Civ.P. 55(c) and 60(b).[1] That motion was denied by the district court on June 19, 1979, without written reasons. From that order, Liebman and Riback bring this appeal.

---

1. Fed.R.Civ.P. 55(c) provides:
   For good cause shown the court may set aside the entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Liebman and Riback give three main reasons why their motion should have been granted: (1) They were not given the three–day written notice of the application for default judgment as required by Fed.R. Civ.P. 55(b)(2); (2) they did not receive jury consideration on the question of the amount of damages as guaranteed by Fed.R.Civ.P. 38(a); and (3) the judgment should be set aside in the interest of justice under Fed.R. Civ.P. 60(b) because they were denied an adequate opportunity to present their case by the gross neglect of their attorney.

In response, Seven Elves contends: (1) That the judgment below was based upon a trial on the merits rather than upon the default of Liebman and Riback, and thus is not subject to the requirements of Fed.R. Civ.P. 55; (2) that if the judgment was

entered after a trial on the merits, Liebman and Riback had waived their right to a jury trial by their failure to appear for trial; (3) that if the judgment was by default, Liebman and Riback had received the notice due them under Rule 55(b)(2), and were not entitled to a jury determination on the damages issue; and (4) that regardless of the nature of the judgment below, the trial court did not abuse its discretion in refusing to vacate the judgment under Rule 60(b).

Because we decide the issues before us on the basis of Rule 60(b), which is applicable to both default judgments and judgments entered after trial on the merits, we need not attempt to characterize the judgment at issue on this appeal:[2] whether based on the default of Liebman and Riback or on the evidence adduced at the proceeding be-

---

2. The question of characterizing the judgment below as one entered by default or after a trial on the merits arises from the conflict between the face of the judgment (with its attendant findings of facts and conclusions of law) and the verbatim transcript of the proceedings.

On its face, the judgment would indicate that when the appellants failed to appear at trial, the district court simply went forward with the trial in their absence, receiving the plaintiffs' evidence and basing its judgment on the record thus created. This is the position taken by Seven Elves (whose attorneys drafted the judgment) in arguing that it proved its case on the merits below, and was not therefore awarded a default judgment under Rule 55.

The verbatim transcript, however, belies that characterization. The transcript shows that when the appellants failed to appear for trial, Seven Elves immediately moved to strike their pleadings and for the entry of a default judgment against them. The court granted both motions, entering its judgment prior to the taking of any evidence. The court then proceeded to take evidence on the issue of damages, and at the close of the evidence set the amount of damages at $250,000. *See* Supp.R.I.: 2–3, 22–23. The trial court's docket control sheet is in accord with the verbatim transcript. The transcript is supported as well by the trial judge's own characterization of the judgment as a default in his order denying the appellants' motion to vacate.

Although we pretermit the characterization issue, we should note that it is of more than merely academic interest. Under the existing case law of this circuit it is highly doubtful that a defendant's failure to appear for trial under the circumstances here presented would constitute a default at all within the meaning of Rule 55. *See Bass v. Hoagland*, 172 F.2d 205, 209–

10 (5th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949). In *Bass*, this court addressed this precise issue, and concluded:

[Rule 55] does not require that to escape default the defendant must not only file a sufficient answer to the merits, but must also have a lawyer or be present in court when the case is called for a trial.... When Bass by his attorney filed a denial of the plaintiff's case neither the clerk nor the judge could enter a default against him. The burden of proof was put on the plaintiff in any trial. When neither Bass nor his attorney appeared at the trial no default was generated; the case was not confessed. The plaintiff might proceed, but he would have to prove his case.

172 F.2d at 210. *See* 6 Moore's Federal Practice ' 55.02[3], at 55–15 n.12 (2d ed. 1976). Although *Bass* has been criticized on this, as well as other grounds, *see, e. g.*, Note, *Extending Collateral Attack: An Invitation to Repetitious Litigation*, 59 Yale L.J. 345, 348–51 (1950), it nevertheless remains as binding precedent in this circuit. Thus, under *Bass*, a *default* judgment entered upon the failure of the appellants or their attorney to appear at trial might well be found to have been erroneously entered as a matter of law under Fed.R. Civ.P. 55. That being so, and the appellants having been ignorant of the entry of default (for lack of notice) until the time for appeal had run, it might well follow that the district court's denial of relief under Rule 55(c) would be found to have been an abuse of discretion sufficient to warrant reversal on appeal.

Our pretermission of the characterization issue avoids any such result, and renders unnecessary any further consideration of the appellants' contentions under Rule 55.

low, the judgment must be vacated and the cause retried in order to afford the appellants an adequate opportunity to present their case.

## I

Rule 60(b) provides, in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

The purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default, *see* Fed.R.Civ.P. 55(c), or otherwise. By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of *all* the facts." *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (Italics in original).

In this light, it is often said that the rule should be liberally construed in order to do substantial justice. *E. g., Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n,* 507 F.2d 227, 228–29 (5th Cir. 1975); *Laguna Royalty Co. v. Marsh,* 350 F.2d 817, 823 (5th Cir. 1965); *In Re Casco Chem. Co.,* 335 F.2d 645, 651 n.18 (5th Cir. 1964); *Serio v. Badger Mutual Ins. Co.,* 266 F.2d 418, 421 (5th Cir.), *cert. denied,* 361 U.S. 832, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959). What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice–function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause. *See Bros., Inc. v. W. E. Grace Mfg. Co.,* 320 F.2d 594, 610 (5th Cir. 1963); *Serio v. Badger Mutual Ins. Co.,* 266 F.2d at 421. This is not to say that final judgments should be lightly reopened. The desirability of order and predictability in the judicial process calls for the exercise of caution in such matters. *See Fackelman v. Bell,* 564 F.2d 734, 736 (5th Cir. 1977). But there can be little doubt that Rule 60(b) vests in the district courts power "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." [3] *Klapprott v. United States,* 335

---

**3.** In *Klapprott v. United States, supra* in text, the Supreme Court stated:

In simple English, the language of the "other reason" clause [Rule 60(b)(6)], *for all reasons except the five particularly specified,* vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.

335 U.S. at 614–15, 69 S.Ct. at 390 (Italics supplied). The italicized language, along with the fact that the rule itself imposes different time limits on motions under Rule 60(b)(6) and 60(b)(1)–(3), has led to the conclusion that the grounds specified under the first five subsections will not justify relief under subsection (6). As a practical matter, however, where the Rule 60(b) motion is brought within one year and within a "reasonable time," there is no need to differentiate between the grounds justifying relief under subsections (1)–(5) and those justifying relief under the residual subsection.

[C]lause (6) is a residual clause to be invoked only on the basis of some reason other than those specified in the preceding clauses (1)–(5). Clause (6) does not confer a discretionary dispensing power upon the district court

U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949); *Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968); *Bridoux v. Eastern Air Lines, Inc.*, 214 F.2d 207, 210 (D.C.Cir.1954).

■ Motions under Rule 60(b) are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion. *Fackelman v. Bell*, 564 F.2d at 736. It is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so *unwarranted* as to constitute an abuse of discretion. *Id.* Nevertheless, the discretion of the district court is not unbounded, and must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice. *See generally Smith v. Jackson Tool & Die Inc.*, 426 F.2d 5, 8 (5th Cir. 1970); *Laguna Royalty Co. v. Marsh*, 350 F.2d at 823; *Bridoux v. Eastern Air Lines, Inc.*, 214 F.2d at 210. That same consideration must inform appellate review of a district court's exercise of discretion under Rule 60(b); and where denial of relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal. *See Bridoux v. Eastern Air Lines, Inc., supra.*

In sum, then, Rule 60(b) is "a grand reservoir of equitable power to do justice in a particular case," *see Menier v. United States*, 405 F.2d at 248, that may be tapped by the district court in the sound exercise of its discretion, and within the strictures inherent in the underlying objectives of the rule. Our task on this appeal is to determine whether the district court's refusal to tap that reservoir in the present case was so unwarranted as to justify reversal.

We conclude that it was.

## II

In *United States v. Gould*, 301 F.2d 353, 355–56 (5th Cir. 1962), *quoting* 7 Moore's Federal Practice ¶ 60.19, at 237–39, this court delineated factors that should inform the district court's consideration of a motion under Rule 60(b): (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments. *Id.*

■ Applying these factors to the circumstances of the present case in light of the discussion in the preceding section of this opinion, we must conclude that the district court's denial of relief was suffi-

---

to grant relief on the basis of any reason enumerated in the preceding clauses, although when the motion is timely it is not crucial to determine whether the reason is contained in any of the preceding clauses; and attention may be focussed on a determination as to whether the reason justifies relief.

7 Moore's Federal Practice ⸺ 60.27[2] at 353 (footnotes omitted).

[C]lause (6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding

clauses, or when it is uncertain that one or more of the preceding clauses afford relief but the motion is, nevertheless, timely and the reason justifies relief.

*Id.* at 375–76 (footnotes omitted). *See also* 11 Wright & Miller, Federal Practice and Procedure § 2864, at 211–12 (1973).

Thus, where a Rule 60(b) motion is filed within a reasonable time and within one year of the entry of the challenged judgment, Rule 60(b)(6) may be seen as an extension of the grounds enumerated in subsections (1)–(5). 11 Wright & Miller, *supra*, § 2864, at 211–12.

ciently misaligned with the equities as to warrant reversal.

There is no suggestion that the Rule 60(b) motion in this case is being used as a substitute for appeal. Nor can it be suggested that the motion, which was filed within one year of the entry of judgment and twelve days after the appellants' discovery of the existence of the judgment, was not brought within a "reasonable time" as that term is used in Rule 60(b).

This court has noted that the rule is applied most liberally to judgments in default. *See, e. g., Fackelman v. Bell,* 564 F.2d at 735. We have pretermitted the problem of determining whether the judgment below was rendered by default or after a trial on the merits. *See* note 2 *supra.* Nevertheless, we must note that it bears many of the characteristics of a default judgment. It was entered in the appellants' absence; it was entered prior to the taking of any evidence; although evidence was adduced, the evidentiary proceeding was of uncertain scope and focus insofar as the substantive merits of the case are concerned; and it is clear from the record that the appellants did not in fact have an opportunity to present their side of the controversy. Thus, regardless of the technical characterization of the judgment below, it seems clear that the full merits of the cause were not examined. Truncated proceedings of this sort are not favored, and Rule 60(b) will be liberally construed in favor of trial on the full merits of the case. Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief. The absence of injustice is clear when the movant is unable to show the existence of a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial, 22 Wright & Miller, *supra,* § 2698, at 346; *see Moldwood Corp. v. Stutts,* 410 F.2d 351, 352 (5th Cir. 1969), and that he had no fair opportunity to present that defense in the proceeding below. We believe the appellants in this case have shown both the existence of a sufficiently meritorious defense and the absence of a fair opportunity to present that defense below. The motion to set aside the judgment, supported by the affidavits of the appellants and the attorney Elene Glassman, indicates the existence of facts that would go toward showing the appellants' good faith reliance on the advice of counsel—a factor to be weighed by the jury in determining the existence of essential elements of the malicious prosecution action. The absence of a fair opportunity to present their claim or defense is likewise clearly demonstrated. The appellants did not appear at the proceeding below. Their absence resulted from the confluence of a number of unusual circumstances: they were informed by their attorney that no action would be required of them unless and until he contacted them; he subsequently "withdrew" from the case without being relieved as attorney of record or informing the appellants of his withdrawal; he determined he would not appear at trial without informing the appellants of that decision; and although notice of trial was forwarded to the appellants, they did not in fact receive it. Thus, relying on the assurances of their attorney, as might any laymen, the appellants found themselves the judgment debtors of Seven Elves in the amount of a quarter of a million dollars without ever having had their day in court.

Other equities as well would militate in favor of relief. There are no intervening rights that would be prejudiced by the granting of relief; no great delay is likely to occur; the amount of money involved is very great, itself militating in favor of a full trial on the merits; and any possible malpractice remedy against their attorney would be inadequate to restore the appellants to their prejudgment position.

Balanced against these considerations is the desirability of preserving the principle of the finality of judgments. That policy is, and should be, strong. But in the face of the unusual circumstances delineated above, we conclude that it must yield to the equities of the case in order that the appellants may be afforded their day in court.

*Conclusion*

The order and judgment of the district court are REVERSED and the cause is REMANDED for trial on the merits.

REVERSED AND REMANDED.