SOUTHERN DISTRIBUTING
COMPANY, INC., a Texas
Corporation, Plaintiff,

v.

TECHNICAL SUPPORT ASSOCIATES,
INC., a California Corporation, and
Beverage Systems, Inc., Defendants.

Civ. A. No. L-83-8.

United States District Court,
S.D. Texas,
Laredo Division.

May 24, 1984.

## MEMORANDUM OPINION AND ORDER

KAZEN, District Judge.

Pending before the Court is a motion by Defendant Beverage Systems, Inc. (BSI) to vacate a default judgment signed by this Court on June 21, 1983. The parties have extensively briefed their respective positions. Additionally, on May 7, 1984, the Court conducted an evidentiary hearing and also heard oral arguments from both sides. The Court will grant BSI's motion for the reasons herein briefly stated.

Because BSI is a California corporation, service of process upon it is controlled by Rule 4(e), Fed.R.Civ.P., *Burstein v. State Bar of California*, 693 F.2d 511, 514 (5th Cir.1982). That rule dictates that service must be made "under the circumstances and in the manner prescribed by" state statute. In this case, service was attempted pursuant to article 2031b, V.A.T.S. Section 1 of that statute generally provides that a foreign corporation, under circumstances applicable here, is "conclusively presumed to have designated the Secretary of State of Texas" as its agent upon whom service of process may be made. Section 5 then provides that whenever process is served upon the Secretary of State, that official "shall require a statement of the name and address of the home or *home office* of the nonresident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested." (emphasis supplied).

In this case, the undisputed evidence is that the home office of BSI is 4905 Savannah Street, San Diego, California. (PX. 1). The Secretary of State was not given nor did he send process to that address. Instead he sent the process to Tony Caputo, 1007 5th Avenue., Suite 700, San Diego,

California. Caputo was the person designated as agent for service of process in an instrument filed by BSI with the Secretary of State of California, presumably pursuant to legal requirements of that State. Thus we have a situation where BSI, a California corporation, was apparently required by California law to designate an agent for service of process in that State and did so. It also had the option of designating an agent for service of process in Texas, but did not do so. According to Texas law, therefore, the fiction was created that the Secretary of State of Texas was BSI's agent in Texas. The law further requires that agent, however, to send the process papers to the "home or home office of the nonresident". This was not done. Instead the designated Texas agent sent the papers to the designated California agent. While the difference may seem an unimportant technicality, Rule 4(e) commands this Court to look to state law to determine if service was proper. *Burstein, supra.* The Court concludes that a Texas court would hold that it was not. In *Verges v. Lomas & Nettleton Financial Corp.,* 642 S.W.2d 820 (Tex.Civ.App.—Dallas, 1982, no writ), the Court held that under section 5 of article 2031b, furnishing the Secretary of State with the "last known address" of a nonresident was not the equivalent of the "home address". This reasoning was applied:

> "Our courts have consistently held that since substituted service is in derogation of common law, the statute authorizing the substituted service must be followed with strict compliance.... Inherent within the standard of strict compliance is the requirement that the statute be strictly construed."

*Verges,* 642 S.W.2d at 821–822. Following that reasoning, this Court concludes that the address of BSI's designated agent under California law is not the equivalent of BSI's "home address". Therefore, service was inadequate and the judgment is void.

■ This Court's ruling is based on a second ground. Rule 55(b)(2), Fed.R.Civ.P. provides that if the party against whom default judgment is sought "has appeared"

in the action, it shall be served with written notice of the application for judgment "at least three days prior to the hearing on such application". It is undisputed that no such notice was given in this case. The argument is whether or not BSI had "appeared" in the action. Although BSI made no formal appearance nor filed any papers prior to the default judgment, "courts now look beyond the presence or absence of such formal actions to examine other evidence of active representation. Several cases have held that informal contacts between parties may constitute an appearance." *Lutomski v. Panther Valley Coin Exchange,* 653 F.2d 270, 271 (6th Cir.1981). In this case the evidence reflects that attorney Caputo's first response to the filing of the lawsuit was a letter to Plaintiff's attorney of April 4, 1983, which primarily questioned the fact that Caputo was an authorized agent of BSI. (DX. 1). This letter was followed by a telephone conversation between Caputo and Plaintiff's attorney, where the agency issue was again discussed but during which both attorneys expressed a desire to amicably resolve the dispute. Following this conversation, Caputo advised Creighton Webb of BSI to contact Drew Claes, an employee of Plaintiff, to resolve the matter.

Webb and Claes then had several telephone conversations to discuss Plaintiff's computer system problems. At some point during these discussions, Webb suggested to Claes that the instant lawsuit should be dismissed because of their ongoing cooperation. Claes replied that he had no authority to do so and that such a decision would have to be made by his superiors. This response angered Webb and he at least temporarily balked at sending additional software systems to Claes. Later, apparently as a result of a telephone conversation with Caputo, Webb relented. Telephone conversations of June 21 and 22, 1983 with Claes were followed by a letter of June 27, 1983, agreeing to supply certain software and other materials. Of course by this time, unknown to Webb and Caputo, default judgment had already been en-

tered. Indeed entry of default judgment may have even been unknown to Claes. He neither testified at the hearing nor furnished an affidavit and therefore his view of these events is unknown. The June 27 letter from Webb to Claes recites that, "this update will serve to satisfy or resolve your dispute with (BSI) and certainly any claim you may have against BSI." (DX 5).

Apparently part of the confusion between the parties stems from the fact that Plaintiff and BSI had entered into a service agreement unrelated to the transaction which is the subject of this lawsuit. See Defendant's Exhibit 4. The evidence suggests that while Webb thought he was in the process of settling this lawsuit, Claes perhaps believed that he was simply negotiating implementation of this separate agreement between the parties. There was little communication between Caputo and Webb, so that Webb assumed Caputo was protecting BSI's legal interests while Caputo assumed that Webb was settling the dispute directly with the Plaintiff. Meanwhile, from the time that he initially heard from Caputo in April until he sought default judgment on June 21, 1983, attorney Trevino was being informed by Claes, and not entirely inaccurately, that the Plaintiff had still not received satisfaction from BSI. This confusion is evident as late as August 8, 1983, when Caputo wrote to Trevino noting Webb's June 27 letter and adding: "With the 'update' system provided to your client, I would hope that the Texas action could now be dismissed against Beverage Systems." (DX 3). Trevino replied: "As far as my client is concerned, we *never* had any contact with Beverage Systems attempting to resolve *the matter which was the subject of our lawsuit.*" (PX 2) (emphasis supplied).

The Court concludes that the foregoing fact situation does constitute "an appearance" by BSI, as that term has been interpreted by the courts. Certainly the facts here are at least comparable to those in the leading case of *H.F. Livermore Corp. v. Aktiengesellschaft Gerbruder Loepfe*, 432 F.2d 689 (D.C.Cir.1970). This conclusion is not meant as an approbation of the conduct of either Caputo or Webb. On the contrary, Caputo seemed preoccupied throughout with the fact that he had never been designated as an agent for service of process by BSI, which in fact turned out to be incorrect. Knowing that suit had been filed, he did advise Webb to pursue settlement negotiations, but seemingly did very little to monitor the status of those negotiations. Likewise, whether through Caputo's negligence or otherwise, Webb apparently never fully understood the thrust of Plaintiff's lawsuit or, if he did, never ascertained that he was negotiating one thing while Drew Claes was negotiating something else.

 At the same time, however, the Court recognizes that the entry of default judgment is a drastic remedy that should be resorted to only in extreme situations. *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir.1978). Also, a Rule 60(b) motion to set aside a default judgment should be "liberally construed in favor of trial on the full merits of the case". *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981).

Finally, the Court is satisfied that if given a trial on the merits, BSI does have "a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial". *Id.* The premise for liability against BSI is the allegation that it has assumed liability for contracts previously made by Technical Support Associates, Inc., the co-Defendant. BSI makes an adequate showing that this premise may not be true. For all of those reasons and because the amount of the judgment is substantial, exceeding $200,000.00, the balance of the factors outlined in *Eskenazi, supra*, weigh in favor of BSI's motion.

It is therefore ORDERED that BSI's motion to set aside default judgment is GRANTED. The judgment of June 21, 1983 is hereby VACATED insofar as it pertains to BSI. That judgment remains in effect, however, as to Technical Support Associates, Inc.

Much time has been wasted, and it is imperative that this case move to trial. To that end, United States Magistrate Marcel C. Notzon is requested to convene a pre-trial conference within two weeks to set reasonably prompt discovery deadlines as well as the deadline for the filing of the joint pre-trial order. It is hoped that this case can be tried during this calendar year.