**MERIDIAN SAVINGS ASSOCIATION, Plaintiff,**

**Resolution Trust Corporation, As Conservator of Meridian Savings Association, Intervenor,**

v.

**Bill A. SADLER & Ronald Savitz, Defendants.**

Civ. A. No. 4–89–360–K.

United States District Court, N.D. Texas, Fort Worth Division.

Dec. 10, 1990.

Werner A. Powers, G. Dennis Sheehan, Haynes and Boone, Dallas, Tex., G. Dennis Sheehan, Haynes & Boone, Fort Worth, Tex., for plaintiff.

Rick K. Disney, Douglas, Kressler & Wuester, P.C., Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION

BELEW, District Judge.

Before the Court is Defendant Sadler's Motion to Reconsider his Motion for Relief From Judgment, filed August 20, 1990. The Motion asks this Court to decide whether doing justice should ultimately prevail over judicial practicality and the need to preserve the finality of judgments. While the Court recognizes the legitimate concerns of protecting the integrity of our judicial system by upholding the finality of judgments, it nevertheless believes that justice must be the ultimate goal of our system, and a system that promotes injustice is not worthy of protection.

## I. BACKGROUND

On November 2, 1989, Intervenor, Resolution Trust Corporation ("RTC") filed a Motion for Summary Judgment against Sadler. In the motion, the RTC alleged that Sadler was personally liable for the deficiencies on seven (7) promissory notes. Included in the amounts sought were a $3,277,000 Promissory Note dated February 13, 1985, a $4,620,487.50 Wraparound

Promissory Note dated March 29, 1985, and a $14,289,496.87 Wraparound Promissory Note dated March 29, 1985. These three notes are hereinafter referred to as the "Notes".

By this Court's Order entered February 20, 1990, summary judgment was granted in favor of the RTC and against Defendant Sadler in the amount of $24,513,511.56. In support of its motion, the RTC submitted the affidavit of Jamie Dies, who testified that Sadler was personally liable on all seven of the Notes in the total amount of $24,513,511.56, the same amount of the judgment later taken against Sadler. Mr. Dies and the RTC were in error, however, as three of the seven Notes specifically provide that Sadler is not personally liable on the Notes in the event of a default and that the only remedy available is foreclosure on the property.[1]

Before the RTC filed its Motion for Summary Judgment, however, Sadler's attorney of record withdrew from the case and Sadler was forced to proceed on a *pro se* basis.[2] Unaware of the legal significance of the Motion for Summary Judgment and his opportunity to contest it, Sadler did not file a response to the motion and summary judgment was granted on February 20, 1990.[3] Sadler did not receive notice of the order granting summary judgment until February 26, 1990, after the time to appeal had expired.

Realizing the importance of the judgment taken against him, Sadler hired an attorney to represent him who immediately filed this Motion for Relief From Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[4] Sadler urges this Court to modify its previous summary judgment order by entering a new judgment computed without regard to the three nonrecourse Notes and argues that doing so will create no hardship on the RTC inasmuch as the RTC has taken no actions in reliance on the judgment.

Arguing that the Court's February 20, 1990 Order should not be disturbed, the RTC has advanced three distinct arguments: (1) Sadler had ample opportunity to respond to the Motion for Summary Judgment but did not. (2) Sadler waited several months after the judgment became final to enlist this Court's aid in setting aside the judgment. (3) Sadler's decision to proceed *pro se* in this matter should not be viewed with sympathetic eyes.

## II. ANALYSIS

Given these facts, it is this Court's responsibility to apply the law to the facts and to arrive at a just result. The starting point for our analysis is the Supreme Court's decision in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949). The *Klapprott* Court held that Rule 60(b) vests in the district courts power "adequate to enable them to vacate judg-

---

**1.** Paragraph twelve in each of the three Notes reads: *"Limitation of Liability.* Without impairing the rights, powers, privileges or liens under the Deed of Trust, *the Payee by its acceptance hereof, hereby agrees that there shall be no personal liability on this Note,* or under the Deed of Trust, and nothing contained herein, or under the Deed of Trust shall obligate Borrower or his heirs, executors, administrators, legal representatives, successors or assigns further than to bind his or their right, title and interest in and to the property covered by the Deed of Trust." (emphasis added).

**2.** In his affidavit submitted in support of this Motion, Sadler testified that he could not afford to hire an attorney to represent him in this matter. It also bears noting here that the reason Mr. Sadler's first attorney withdrew from the case was for non-payment of attorney's fees.

**3.** Sadler testified in his affidavit that he understood only that he would have his day in court

on February 11, 1991 and was not aware that a motion for summary judgment can eliminate the need for, and also be a substitute for, a trial on the merits.

**4.** Rule 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ... or (6) any other reason justifying relief from the operation of the judgment....

ments whenever such action is appropriate to accomplish justice." 335 U.S. at 614–15, 69 S.Ct. at 390, 93 L.Ed. at 266.

As stated by the Fifth Circuit in its decision in *Seven Elves, Inc. v. Eskenazi,*

> The purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments.... By its very nature, the rule seeks to strike a balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'

635 F.2d 396, 401 (5th Cir.1981), citing *Banker's Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (Italics in original). The court continued: "In this light it is often said that the rule should be liberally construed in order to do substantial justice. (citations omitted) What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.*

■ Like many other areas of the law, federal district courts have wide discretion in deciding Rule 60(b) motions. *See Klapprott,* 335 U.S. at 614–15, 69 S.Ct. at 390; *Seven Elves,* 635 F.2d at 401–02. Furthermore, their decisions will be disturbed on appeal only for abuse of that discretion. *Seven Elves,* 635 F.2d at 402; *Fackelman v. Bell,* 564 F.2d 734, 736 (5th Cir.1977). The factors for the court to consider in exercising its sound discretion include:

> (1) that final judgments should not be lightly disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be

liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves,* 635 F.2d at 402 (citing *United States v. Gould,* 301 F.2d 353, 355–56 (5th Cir.1962), *quoting* 7 Moore's Federal Practice ¶ 60.19, at 237–39).

■ Of these eight factors, the fifth and sixth ones delineated have no bearing on the case at bar. The remaining six considerations lead this Court to conclude that justice requires that the summary judgment be set aside and a new judgment be entered to reflect the fact that three of the promissory notes are nonrecourse ones for which the Defendant, Sadler is not personally liable. Plaintiff, in its Motion for Summary Judgment, submitted an affidavit that incorrectly asserted that Mr. Sadler is personally liable on all seven promissory notes. While the Court does not find that Plaintiff's actions rise to the level of fraud as suggested by the Defendant, they nonetheless constitute a mistake which until now has escaped the Court's attention.[5] The result was additional personal liability for Mr. Sadler in the amount of $22,186,-984.37.

No suggestion has been made that the Rule 60(b) motion in this case is being used as a substitute for appeal.[6] Nor can it be

---

**5.** The Plaintiff's error was compounded by the fact that Mr. Sadler was unable to afford to hire an attorney to represent his interests. Thus, the error, which normally would have been brought out in opposition to the motion for summary judgment, was not brought to the Court's attention until Mr. Sadler was able to employ coun-

sel, three and one-half months after the judgment became final.

**6.** Indeed, though the time for an appeal expired before the Defendant received notice of the judgment, this Rule 60(b) Motion is not a substitute for an appeal in the ordinary sense of the

suggested that the motion was not brought within a "reasonable time" as that term is used in Rule 60(b), since it was filed within one year of the entry of judgment [7] and immediately after Mr. Sadler was financially able to retain counsel. Regarding the seventh factor to consider, whether there are intervening equities that would make it inequitable to grant relief, the Court finds that there are none, largely due to the fact that the Plaintiff has taken no justifiable actions in reliance on the judgment.

### III. CONCLUSION

Essentially, the Court's new order, entered this same date, will merely reduce the amount of the judgment to be collected from Mr. Sadler and thus, any actions by Plaintiff in reliance on the judgment will not have been in vain. The remaining considerations—that final judgments should not lightly be disturbed, that Rule 60(b) should be liberally construed, and any other factors relevant to justice—all lead the Court to conclude that justice demands that the summary judgment be amended. Aware of the utter futility of preserving at all costs a judicial system that is completely devoid of justice, and rather than work an extreme hardship on the Defendant and produce a windfall for the Plaintiff, the Court chooses to modify its February 20, 1990 Order to compute the judgment award without regard to the three nonrecourse loans. The Court's amended Judgment reflecting this change will be entered this same day.

### AMENDED JUDGMENT

In conformance with the Court's Memorandum Opinion and Order entered this date, the Court's February 20, 1990 Judgment taken against Mr. Sadler in the amount of $24,513,511.56 is hereby amended to $2,326,527.19. All other provisions in the prior judgment, to include the post-

judgment interest rate, shall remain the same.

IT IS SO ORDERED.

remains personally liable on all seven promissory notes.

---

word, where a party seeks relief from what he believes to be an erroneous ruling. Mr. Sadler is not seeking relief from the Court's judgment after a trial on the merits which was based on the true facts of this case. Rather, Mr. Sadler seeks relief from a judgment of the Court that was based on an erroneous premise—that he

7. Sadler's Motion for Relief from Judgment was filed three and one-half months after the summary judgment was entered.