James C. AMBERG, Robert Ray Carroll, Roscoe P. Steen, W.M. Causey, Billy Ray Whitehead, and Benny Zeagler, individually and as Directors of The Olla State Bank, Petitioners,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.

No. 90–4556.

United States Court of Appeals, Fifth Circuit.

July 2, 1991.

Claudia Sue Dunn, Kenneth E. Pickering, Pickering, Cotogno, Delsa & Dunn, Dermot S. McGlinchey, Eve B. Masinter, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for petitioners.

George O. Barnwell, Sr. Atty., Colleen B. Bombardier, Tom Schulz, Hoyle L. Robinson, Executive Secretary, Robert E. Feldman, Deputy Executive Secretary, FDIC, Washington, D.C., for respondent.

Before REYNALDO G. GARZA, POLITZ, and JONES Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

This is an appeal from an FDIC order of default against Petitioners for violating 12 U.S.C. § 1828(j)(4). In entering default, the FDIC applied its Rules of Procedure and found the Petitioners did not have good cause to file a late answer. In reviewing the statute we find we have jurisdiction and the FDIC acted in violation of the Administrative Procedure Act. We therefore reverse the FDIC's order of default and remand for appropriate hearings.

## I. Disposition Below

This case arises from a Notice of Assessment of Civil Money Penalties, Findings of Fact and Conclusions of Law, Order to Pay and Notice of Hearing ("Notice") issued by the Federal Deposit Insurance Corporation ("FDIC") on September 28, 1989.[1] The Notice was filed against James C. Amberg, Robert Ray Carroll, Roscoe P. Steen, W. M Causey, Billy Ray Whitehead and Benny Zeagler ("Petitioners") individually and as directors of Olla State Bank pursuant to 12 U.S.C. § 1828(j)(4). Causey was assessed a $10,000 penalty while all the others were assessed $20,000.[2] The Notice was served on Carroll, Steen, Whitehead and Zeagler on October 3 and on Amberg and Causey on October 4. Petitioners' counsel filed a Notice of Appearance on October 16 which included a request for a hearing. On October 27 an answer was filed.

Though it had received Petitioners' answer, the FDIC moved for entry of a default order on November 2 because the answer was not timely.[3] Petitioners filed an opposition to an entry of default and a motion for extension of time to file an answer on November 6. The ALJ denied the FDIC's motion to grant a default and found Amberg and Causey's answers were timely, and although the others were not timely, their answers would be accepted because there was good cause for the delay on January 3, 1990.[4] The Board of Directors of the FDIC ("Board") granted special permission to appeal and on June 26 issued a Decision and Order rejecting the ALJ's decision and granting the FDIC's motion for entry of default orders against

---

1. Unless otherwise specified, all dates occurred in 1989.

2. Causey was assessed half of what the rest were because he was present at only one of the two directors' meetings from which the FDIC allegations arise.

3. 12 C.F.R. § 308.21(a) (1990) *Timely answers are required.*
(1) Every Respondent shall file an answer with the Executive Secretary within twenty days after service of the Notice.

12 C.F.R. § 308.75(a) (1990) *Assessment.* The civil penalty shall be assessed upon service of the Notice of Assessment and shall automatically become final and unappealable unless the Respondent both (1) requests a hearing pursuant to the provisions of § 308.20 and (2) answers the notice provisions of § 308.21 of subpart B of this part.

4. The dates next mentioned occurred in 1990.

the Petitioners. Petitioners filed motions to reconsider and for a stay. Though both were denied on October 2, previously on July 25, Petitioner filed for review of the Board's decision with this court.[5]

## II. The Law
*Jurisdiction—The buck stops where?*

■ The civil money penalty assessments against state, nonmember banks like Olla State Bank and the Petitioners arose from 12 U.S.C. § 1828(j)(4). A right to a hearing and then by reference to judicial review is granted by § 1828(j)(4)(F).[6] The hearing's proceedings will then be governed by § 1818(h).[7] Section 1828(j)(4)(E) concerning assessments references several subparagraphs of § 1818(i)(2) to establish some procedures (finality of hearing and collection parameters).[8]

The FDIC asserts § 1818(h)(2) allows judicial review of any order made pursuant to an (h)(1) hearing. Since there was no hearing, the statute would preclude review because no jurisdiction existed. Furthermore, the FDIC contends *Harper v. Bowen*, 813 F.2d 737 (5th Cir.), *cert. denied*, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987), precludes judicial review of an agency decision not to extend a jurisdictional time limit.

The FDIC also maintains its procedural requirements were not met and therefore the Petitioners waived their right to a hear-

ing and therefore their right to judicial review. Since the FDIC established regulations which required an answer to be filed within twenty days, the time limit is jurisdictional. The FDIC cites several cases to support this proposition and argues because the Petitioners did not timely file an answer as required by the regulations, no jurisdiction should exist. *Texas Municipal Power Agency v. Administrator of United States Environmental Protection Agency*, 799 F.2d 173, 174 (5th Cir. 1986) ("Statutory time limits on petitions for review of agency actions are jurisdictional in nature such that if the challenge is brought after the statutory time limit, we are powerless to review agency's action."); *Texas v. United States*, 749 F.2d 1144 (5th Cir.), *cert. denied sub nom. Interstate Commerce Com. v. Texas*, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985) (Hobbs Act's requirement of filing for review within 60 days is jurisdictional and cannnot be judicially expanded.); *National Bank of Davis v. Office of Comptroller of Currency*, 725 F.2d 1390 (D.C.Cir.1984) (Statutory time limitation to appeal is jurisdictional and may not be enlarged by the court.)

While these arguments have an outwardly appealing ambiance, jurisdiction does exist. There is no dispute that all of the Petitioners timely filed for a hearing. As for the FDIC's cases making regulatory time limits jurisdictional, we find them in-

---

**5.** As is often the case with appeals from administrative agencies arising when the merits have not yet been reached, this case will be decided on the procedural record alone. We will, therefore, avoid commenting upon the underlying facts and any interpretations that may be drawn from them.

**6.** Section 1828(j)(4)(F) reads:
    **Hearing.** The nonmember insured bank, savings association, or other person against whom any penalty is assessed under this paragraph shall be afforded an agency hearing if such nonmember insured bank, savings association, or other person submits a request for such hearing within 20 days after the issuance of the notice of assessment. Section 1818(h) of this title shall apply to any proceeding under this paragraph.

**7.** Section 1818(h) which is entitled Hearings and judicial review reads in pertinent part:

**(1)** Any hearing provided for in this section ... shall be conducted in accordance with the provisions of chapter 5 of Title 5. [A decision shall be rendered by the appropriate body and it will be served "upon each party to the proceeding"]. Judicial review of any such order shall be exclusively as provided in this subsection (h) of this section....
**(2)** Any party to any proceeding under paragraph (1) may obtain a review of any order served pursuant to paragraph (1) of this subsection.

**8.** 12 U.S.C. § 1818(i)(2)(E)(ii) **Finality of assessment.** If, with respect to any assessment under clause (i), a hearing is not requested pursuant to subparagraph (H) within the period of time allowed under such subparagraph, the assessment shall constitute a final and unappealable order.

apposite. Each case cited dealt with a federal court not finding jurisdiction because of a *statutory* time limitation, not a *regulatory* one. The FDIC mistakenly places heavy reliance upon *In re Kronholm,* 915 F.2d 1171 (8th Cir.1990). In *Kronholm,* the Petitioner was assessed a penalty as per § 1828(j)(4), he did not request a hearing within the statutorily prescribed time frame, and was precluded from appealing because the assessment became final and unappealable as per § 1818(i)(2)(E)(ii)[9]. In the case at bar, Petitioners all made a timely request for a hearing. Therefore, (E)(ii) cannot make the assessment final and unappealable.

Judicial review "will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (citations omitted). Section 1828(j)(4) was amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 907 (1989). It altered the provisions for an aggrieved party to receive a hearing. Formerly, a party had to request a hearing within ten days and if none were requested then the order would be final and unappealable. After FIRREA, the statute changed granting an aggrieved party 20 days to request a hearing and removing any mention of a failure to file rendering an order final. The old § 1828 also provided review only for agency violations of 5 U.S.C. § 706(2)(E).[10] The legislative history tells us Congress wanted "the scope of judicial review upon appeal [to be] expanded to include all grounds in the Administrative Procedure Act (5 USC 706[11])." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 394, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 190.

In light of this Congressional preference for judicial review, § 1818(h)(2) does grant jurisdiction upon this court. The Petitioners timely filed for a hearing as per §§ 1828(j)(4)(E)[12] and (F). Since the Petitioners properly filed for a hearing, and (h)(1) sets out how the entitled hearing shall be held, they qualify as (h)(2) "part[ies] to any proceeding under paragraph (1)." The default order granted because the Petitioners did not properly request a hearing[13] affords "review of any order served pursuant to paragraph (1)." Statutorily entitled to a hearing, an FDIC procedural requirement has precluded one.[14]

In light of *Abbott's* desire to grant judicial review if Congress does not specifically preclude it, the Congressional history expressing a desire to expand the scope of judicial review and the FIRREA statute itself, we find jurisdiction does exist.

### *Severity of the FDIC's procedure*

■ The ALJ denied the FDIC's motion to enter a default against Petitioners be-

---

**9.** See Footnote 8.

**10.** See Footnote 11.

**11.** Section 706 Scope of review
To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, finding and conclusion found to be:
(A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority or short of statutory right;

(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute.
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

**12.** Section 1828(j)(4)(F) in no uncertain terms requires the agency to provide a hearing as per § 1818(h) if an aggrieved party requests a hearing within 20 days.

**13.** As per the FDIC's regulations whose impact and validity will later be discussed.

**14.** At this time, we merely are showing the statute does grant jurisdiction.

cause it found 12 C.F.R. § 308.21(a)(2) [15] good cause was shown because the FDIC's cover letter to its Notice was misleading, leaving the impression that in order to have a hearing all that need be done is request a hearing. Though the Notice did have the requirement to file an answer at page 8, the ALJ found the failure to file an answer was not dilatory or strategic but rather inadvertent and trivial. The Board disagreed with the ALJ's order. Though it did not feel the ALJ had the authority to even consider whether a late answer should be allowed,[16] the Board did consider whether good cause existed.

> No matter how short the delay in answering or how slight the apparent prejudice to the Enforcement Counsel, excusable neglect does not constitute "good cause" under section 308.21(a)(2) for extending the time in which to file an answer. Excuse of oversights or inadvertent mistakes in matters involving the FDIC's procedural timeframes would create chaos in the administrative process and reduce the incentive of litigants in FDIC proceedings to follow the commands of the FDIC Rules. This would be contrary to the Board's intent to require strict compliance.

*Board order* at 15. The default order was, therefore, reinstated.

The FDIC would achieve strict compliance with such an interpretation but that, however, begs the question of whether such an interpretation is justified. In modeling its rules, the FDIC commented,

> we note that while several of the concepts, and most of the language in re-

vised Part 308 is new to the part, those concepts, and much of the language are not unique to revised Part 308. Rather, most have their origins in the Federal Rules of Civil Procedure, other agencies' regulations, and, to a lesser degree, in standing pretrial orders and practices of various United States district court judges and administrative law judges.

53 Fed.Reg. 5392 (1988). Though administrative agencies have great discretion in formulating their own rules and procedures, *Federal Communications Com. v. Pottsville Broadcasting Co.*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940) [17], we have a situation where the FDIC has specifically borrowed from the Federal Rules of Civil Procedure and other agencies. From these sources, we can gain additional insight into the words and concepts chosen by the FDIC.

Federal Rule of Civil Procedure 55(c) provides for setting aside defaults if good cause is shown before the judgment is entered or afterwards if mistake, inadvertence, surprise or excusable neglect occurred. *See also* Fed.R.Civ.P. 60(b).

> In instances in which it is consistent with the dictates of sound judicial administration and fairness to the parties the courts have evidenced a clear and salutary preference for disposition of litigation on the merits; rather than by default judgment. Accordingly, the requirement of "good cause" and the specific criteria of Rule 60(b) have generally been interpreted liberally.

6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 55,10[2] (2d ed.

---

**15.** 12 C.F.R. § 308.21(a)(2) reads,

The time to file an answer is not extended by the making of any motion. The administrative law judge may grant an extension of the time to answer for good cause shown. Except as provided in paragraph (d) of this section, only the Board may permit filing of a late answer where a default order has been entered against the Respondent pursuant to paragraph (d) of this section or a Notice of disapproval has become final under the provisions of § 308.54 or an assessment of civil money penalties has become final under the provisions of § 308.75. Extensions of time to answer may be conditioned upon such terms

or sanctions as the administrative law judge deems appropriate.

**16.** The FDIC argues 12 C.F.R. § 308.21(a)(2) precludes the ALJ from making this decision.

**17.** In *Pottsville Broadcasting*, the Court commented on an agency's discretion to formulate its own procedures to take evidence and subsequently make decisions. When speaking about those procedures, however, the Court specifically noted this discretion was justified when agencies are involved with the "admissibility of proof." *Id.* at 143, 60 S.Ct. at 441–42, *quoting I.C.C. v. Baird*, 194 U.S. 25, 44, 24 S.Ct. 563, 568–69, 48 L.Ed. 860 (1904).

1990); *see also Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir.1984); *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir.1980) (stating "[d]oubt should be resolved in favor of judicial decision on the merits of a case, and a technical error or a slight mistake by plaintiff's attorney should not deprive plaintiff of an opportunity to present the true merits of his claims").[18] The Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits. Strict enforcement of defaults has no place in the Federal Rules; however, it is being practiced by the FDIC. We must look at the FDIC's determination that good cause does not exist and ascertain if they applied the correct legal standards in applying the record before them.

Because the Board subsequently went on to decide whether good cause existed, we need not address the propriety of the ALJ considering good cause.[19] The Board disagreed with the ALJ's finding that:

> negligent interpretations of FDIC notices or of FDIC Rules can excuse defaults.... The Board recognizes the possibility that a finding of good cause may be appropriate in certain circumstances. However, the determining factor in such cases would be respondent's lack of actual or constructive knowledge, as a factual matter, that a response is required, or inability to file in a timely manner, not the character or seriousness of the oversight.

*Board Order* at 14–15. Because the Petitioners had at least constructive notice of the filing requirements of the answer, this was merely a mistake of law and such a mistake will not be sufficient for a finding of good cause.

In FDIC–88–247k (5/30/89), a bank director filed his answer to the notice of assessment 45 days after the 20 day limitation period had run. Although the director filed a suggestion of bankruptcy and motion to dismiss or stay proceedings three days after the 20 day period, it did not provide an answer to the charges. In enforcing its regulatory timeframe, the FDIC noted not only were the late filings of the answer and the motion factors, but the director was represented by counsel and he never requested an extension of time in which to file an answer; this was not even considered in the case at bar.

Though these Petitioners were represented by counsel, there were considerable factors to warrant a finding of good cause. First, there was a timely request for a hearing. Second, the Petitioners did file an answer. Third, though their formal request to extend their time to file on November 6 came four days after the FDIC moved for an entry of default, their filed answer on October 27 preceded the FDIC's motion by six (four working) days. There is not a full record before us; however, Petitioners' brief claims their counsel contacted the FDIC's counsel and informed him of Petitioners' intent to contest the charges and the penalty assessment. *Petitioner's brief* at 4. At oral argument counsel for the FDIC did not know whether such a conversation took place but asserted in any case it was irrelevant. Such a consideration should not be irrelevant when the merits of the case are being ignored.

Courts will look at three factors when ruling on a motion to set aside a default judgment under Rule 60(b)(1): 1) prejudice to the plaintiff, 2) merits of the defendant's asserted defense and 3) the culpability of defendant's conduct. *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir.1985). In *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir.1981), this court set out several considerations when deciding whether a motion under 60(b) should be granted. Among them were, "that the rule

---

**18.** In *Federal Savings and Loan Insurance Corp. v. Kroenke*, 858 F.2d 1067 (5th Cir.1988) we mentioned, though did not pass upon, the similarity in the factors controlling the decision to set aside entry of default, Rule 55(c), and when applying relief from a judgment under Rule 60(b). We are not faced with the question of their comparative standards but we do note both provisions are accorded liberal interpretations.

**19.** Should curiosity get the best of the reader, consider 12 C.F.R. §§ 308.21(a)(2), (d), and .75.

be liberally construed in order to achieve substantial justice, whether the motion was made in a reasonable time, and whether the merits of the case were considered." *Id.* at 402. We are not attempting to draw a line in the sand for the FDIC, however, in light of its own standards and its self-acknowledged reliance of our own cases and interpretations of the Federal Rules of Civil Procedure, we cannot see how the Board cannot find good cause.

The civil money penalties are substantial; they clearly prejudice the Petitioners. As for the merits of their case, Petitioners have never been given "their day in court." [20] While the FDIC claims to grant extensions for good cause and suggests circumstances that will be considered, in this case the Board limited its inquiry to whether Petitioners' counsel had either actual or constructive notice of the requirement to file an answer. In light of the ALJ's finding that the interpretation of the Notice and the FDIC's letter by Petitioners' counsel was not unreasonable and Petitioners were not acting in a strategic manner to abuse the system, as well as the trivial delay involved and the patent lack of prejudice to the FDIC, the Board's determination that good cause did not exist was error. This application of the FDIC's Rules of Procedure manifests itself as an abuse of discretion as contemplated by § 706(2)(A) of the APA.

### Regulations v. The Statute

■ In making our decision, we not only considered the application of the FDIC's procedures, but the appropriateness of the regulation requiring aggrieved parties to file an answer within 20 days. It is black letter law that an agency may make such rules and regulations as may be necessary to carry out the provisions of its enabling statute so long as the rules and regulations are reasonably related to the purposes of the statute. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369–71, 93 S.Ct. 1652, 1660–62, 36 L.Ed.2d 318 (1973); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . When the construction of an administrative regulation rather than a statute is at issue, deference is even more clearly in order.") (citations omitted).

When deference is warranted, however, we will not bow our heads with closed eyes and walk away; rather we must still look at the actions complained of and see if they can be classified as reasonable. The regulations applied by the FDIC [21] were adopted December 22, 1988 at 53 Fed.Reg. 51656. These regulations were promulgated before FIRREA became effective on August 9, 1989. Previous to their December 22, 1988 revision, the regulations required a party to request a hearing within 10 days and file an answer within 20. The regulations were amended increasing the 10 days to request a hearing to 20 days. Now the same 20 day time period applies to both requests for hearings and filing answers. The reason for doing this was "to reduce confusion that has arisen because of the difference in when the request for a hearing and the answer were due in such cases." 53 Fed.Reg. 51661.

"If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). The question before us then is whether the FDIC regulations at issue should be given controlling weight. In determining this, we consider two factors:

1) Is congressional intent clear? If so we may reject contrary, though reasonable, agency interpretations.

---

**20.** More specifically, in an administrative tribunal.

**21.** The FDIC's Rules of Practice and Procedures.

2) When ambiguity exists, an agency's reasonable interpretation will not be supplanted with our own.

*National Grain and Feed Ass'n v. Occupational Safety & Health Admin.*, 866 F.2d 717, 733 (5th Cir.1988). Though some facial ambiguity might be present in the filing timeframes, that is only caused if the FDIC's regulations are viewed as being co-equal with the Congressional language. Congressional mandates are supreme; agency's interpretations will, on the other hand, be accorded varying weight. *See Chevron*, 467 U.S. at 842–845, 104 S.Ct. at 2781–83. When Congressional intent is silent, an agency's discretion to construe and act will be at its highest; when Congress has clearly spoken on an issue the agency will have little or no discretion and must conform. *See Id.*

Nowhere in the FDIC's enabling legislation is there a requirement that an answer must be filed. In *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983), this court, commenting on the discretion which is usually accorded administrative agencies, stated,

> It was precisely because Congress could not be aware of the particular problems or needs that would develop in an area that it delegated authority to the agencies, within the broad confines of the statutory scheme, to deal with these problems as they arose.

*Id.* at 1044. This discretion is premised upon a lack of Congressional direction. This court is bound by the words Congress chooses and if Congress speaks upon a matter, not only will we listen, but we will make sure the agency hears as well. Though the FDIC is free to establish necessary procedural mechanics, it may not give less than what Congress chooses to grant.

When the regulation was passed, Congress only allowed a party 10 days to request a hearing. The FDIC explained that it would grant parties a longer period of time to file for administrative efficiency and clarity; we have no qualms with that. At that time there was also a requirement for an answer to be filed within twenty days. Since this did not diminish any of the rights Congress had specifically approved of, the FDIC was within its power. Now, however, Congress has granted parties 20 days to request a hearing but the FDIC has not amended their regulations. When Congress extended the amount of time it was allowing to file for a hearing, the FDIC had a new minimum level of protection to afford parties. Since the FIRREA was passed, the FDIC has not reconsidered its regulations. The requirement to file an answer may be necessary, and as for its propriety, we will defer to the FDIC's judgment. We must question the regulatory time limitation, however, in light of the FIRREA.

Certainly if Congress had granted 30 days to request a hearing, a FDIC regulation requiring a request for a hearing to be made within 20 days and filing an answer within 20 days would have to be altered. Similarly, when Congress increases the time to request a hearing to 20 days, the FDIC may not undermine the congressional mandate with its own regulations. When Congress expands rights in an administrative setting, the existing regulatory scheme cannot frustrate that purpose. The FDIC must realize Congress enlarged the period to request a hearing to 20 days and that is a new minimum. The FDIC's decision not to grant the Petitioners a hearing must be reversed as per 5 U.S.C. § 706(2)(A) for not being "in accordance with law." The FDIC need not amend their regulations every time Congress acts, however, the application of their existing regulatory scheme must be viewed in light of the new legislation. We conclude that while FDIC's regulations may, consistent with the statute, posit a jurisdictional default upon failure to file a request for hearing within the statutorily prescribed time limit, they may not categorically do so for failure to file an answer within 20 days after service of the Notice of Assessment.

## III. Conclusion

Finding the FDIC improperly denied Petitioners a hearing and improperly entered a default judgment against them, we RE-

VERSE and REMAND for an appropriate hearing.