Sobeida FELIZ, Administratrix of the
Estate of Santa Encarnacion

v.

UNITED STATES of America and
Lawrence Hulefeld, M.D.

Civil Action No. 09–11931–RGS.

United States District Court,
D. Massachusetts.

March 11, 2011.

Peter C. Knight, Morrison Mahoney LLP,
Michael P. Sady, United States Attorney's
Office, William J. Thompson, Jeffrey W.
Ward, Lubin & Meyer, P.C., Boston, MA, for
Defendant.

Tamara J. Smith, Taylor, Duane, Barton &
Gilman, LLP, Boston, MA, Joshua B. Walls,
Taylor, Duane, Barton & Gilman, LLP, Bos-
ton, MA, for Plaintiff.

## DISTRICT COURT'S SUBMISSION IN RESPONSE TO THE JANUARY 21, 2011 ORDER OF THE COURT OF APPEALS

STEARNS, District Judge.

### BACKGROUND

This medical malpractice and wrongful death action was filed on January 16, 2009, by Sobeida Feliz on behalf of her deceased child, Santa Encarnacion, in the Massachusetts Superior Court. Two of Encarnacion's treating physicians, Dr. Tori Robinson[1] and Dr. Lawrence Hulefeld, were served with the Complaint in due course. Despite being granted two extensions by the Superior Court,[2] during the ten months the Complaint was pending in the state court, service was never made on a third treating physician, Dr. Briain MacNeill, a citizen and permanent resident of Ireland.[3] On November 10, 2009, two days before the Superior Court was to hear a motion to dismiss Dr. MacNeill from the case for want of service, the United States removed the case to the federal district court. On December 22, 2009, this court allowed Feliz's Motion to Appoint Special Process Server and gave Feliz forty-five days to make service. On January 15, 2010, Dr. MacNeill re-filed his motion to dismiss for lack of proper service. On February 1, 2010, the court denied the motion to dismiss and gave Feliz an additional forty-five days to complete service. On March 18, 2010, service still having not been made, Feliz moved for an extension of time to June 16, 2010. The motion prompted Dr. MacNeill to renew his January 15, 2010 motion to dismiss. On March 31, 2010, after receiving

Feliz's response, the court denied Feliz's request for what would have been a fifth extension to make service and allowed Dr. MacNeill's motion.

On April 27, 2010, Feliz filed a Notice of Appeal of the March 31, 2010 order of dismissal with the Court of Appeals. That same day, Feliz filed a motion in this court to vacate the March 31, 2010 order, which the court denied on May 6, 2010. On June 16, 2010, the parties filed a joint motion for an entry of separate and final judgment for Dr. MacNeill for purposes of facilitating the appeal. The parties stipulated in the motion that "[t]here [was] no just reason for delay in the entry of such judgment." The court allowed the motion on June 18, 2010.

Although actively prosecuting the appeal in the First Circuit, Feliz for reasons unknown to the court, reneged on the stipulation and, on August 10, 2010, filed a motion in this court to vacate the March 31, 2010 order of dismissal. The court denied the motion on August 26, 2010, noting that by virtue of the appeal it had no jurisdiction to act in any event. *See United States v. Brooks*, 145 F.3d 446, 455–456 (1st Cir.1998). On January 21, 2011, the Court of Appeals by way of a rescript remanded the case seeking an explanation of this court's implicit determination in entering separate and final judgment that "there [was] no just reason for delay." Fed. R.Civ.P. 54(b).[4]

Service of process is a prerequisite (absent an express or implied waiver) of district court jurisdiction. *Jardines Bacata, Ltd. v. Diaz–Marquez*, 878 F.2d 1555, 1559

---

1. As Dr. Robinson is employed by the federal government, the United States was formally substituted as the proper party on March 26, 2010. *See* 28 U.S.C. §§ 2671–2680.

2. Ninety-day extensions to effect service on Dr. MacNeill were granted by the Superior Court on April 30, 2009, and September 16, 2009. In both instances, the motions for an extension were filed *after* the time allotted by the Superior Court for service had expired.

3. That Dr. MacNeill had returned to his home in Ireland was made known to plaintiff's counsel on June 12, 2009, after an ineffectual attempt was made to serve him at North Shore Medical Cen-

ter/Salem Hospital, his former place of employment.

4. The Court of Appeals also gave leave for this court to act on the August 10, 2010 motion to vacate if it should choose to do so, which it does not. The only change in circumstance after the Notice of Appeal was filed was that plaintiff had finally addressed her failure to make service on Dr. MacNeill during the nearly fifteen months that the case was pending in the state and federal courts. The court will also deny plaintiff's request that the denial of her August 10, 2010 motion to vacate be certified for appeal. As Dr. MacNeill points out, the request is untimely. *See* 28 U.S.C. § 2107.

(1st Cir.1989). Dismissal based on lack of timely service is a two-step analysis. "First, the court must determine whether the plaintiff has met its burden of establishing 'good cause' for the untimely service," and " '[s]econd, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period.' " *United States v. Tobins*, 483 F.Supp.2d 68, 77 (D.Mass. 2007), citing *In re Sheehan*, 253 F.3d 507, 512 (9th Cir.2001). *See also* Fed.R.Civ.P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). Although Rule 4(m) does not by its express terms apply to service of an individual in a foreign country, a court will dismiss a complaint (or party) where a plaintiff has not acted diligently in attempting to make service on a foreign defendant.[5] *See Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263, 266 n. 1 (S.D.N.Y.2000) (unexcused six-month failure to make service on an Irish national after the filing of the complaint warranted dismissal); *Quantum Color Graphics, LLC v. The Fan Ass'n Event Photo GmbH*, 185 F.Supp.2d 897, 906 (N.D.Ill.2002) (ordering plaintiff to show cause why a foreign corporate defendant should not be dismissed where no return of service had been made eleven months after the filing of the complaint).

■ A plaintiff bears the burden of establishing good cause for failing to effect service. *Woods v. Partenreederei M.S. Yankee Clipper*, 112 F.R.D. 115, 116 (D.Mass.1986), citing *Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 (1st Cir.1986) (per curiam). Although "good cause" is not defined in the Rules, the case law is very clear on what

does (and does not) constitute good cause. "[G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1137, at 342 (3d ed.2002). *See also Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir.1993) (good cause shown where the failure to make service was attributable to the negligence of the process server). *Cf. Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir.1995) ("When an alleged defect in service is due to a minor, technical error, only actual prejudice to the defendant or evidence of a flagrant disregard of the requirements of the rules justifies dismissal."). None of the recognized "good cause" excuses applies in this case.

■ In the first instance, there is no evidence (or allegation) of any attempt by Dr. MacNeill to avoid or evade service. Nor is there any practical reason (or explanation) why service could not have been made in the time allotted. Service of process on a foreign national is made under the auspices of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (Hague Service Convention). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (holding that when no agent for service can be found within the United States, the Hague Service Convention provides the exclusive means of effecting service on defendants located in Hague member nations and that inconsistent methods of service prescribed by state law

---

5. Service on an individual in a foreign country is governed instead by Fed.R.Civ.P. 4(f), which prescribes service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague [Service] Convention...." Massachusetts Rule 4(j) sets out a good cause standard similar in wording but arguably more strictly

enforced than Federal Rule 4(m). Dr. MacNeill argues (with some force), that the failure of Feliz to make service under Massachusetts Rule 4(j) while the case was pending cannot be cured after removal by resort to the Federal Rules. In light of the court's disposition of the matter under the Federal Rules, this is not an issue that need now be decided.

are preempted as a result).[6] Under the Convention, each contracting State designates a Central Authority to accept requests for the service of process within its territorial jurisdiction. When requested to make service, the Central Authority does so in the manner permitted by the law of the receiving State. Ireland became a signatory to the Hague Service Convention on April 5, 1994. It took the court roughly two minutes to find on the Internet two process servers willing to make service in Ireland in conformity with the Hague Service Convention. According to the web sites, service ordinarily requires two to five months, but with the payment of an expediting fee, it can be done within one month by one of the process servers, or within twenty-four hours by the other. *See* Process Service Network, http://www.processnet1.com/ireland.htm (last visited March 9, 2011) (guaranteed 30–day service); United Kingdom Process, http://www.ukprocess.com/urgent-process-service.html (last visited March 9, 2011) (next-day service).

Rule 54(b) permits the "entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The approach to an entry of separate and final judgment is in two steps: (1) "the ruling underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally"; and (2) the desirability of immediate review must outweigh the undesirability of promoting piecemeal appeals. *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 580 (1st Cir.1994). The Rule 54(b) judgment must be accompanied by written findings certifying that the ruling in question is final and that there is no just reason for delay. *See, e.g., Gonzalez Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 317 (1st Cir.2009). It is this latter admonition that the court failed to observe in the mistaken belief that the parties' stipulation made clear its reasons for granting the joint motion.

■ The court's reasons, however, are readily apparent. The dismissal is, of course, a final judgment in the sense that it disposes of all claims against Dr. MacNeill. Although the Federal Rules require that the dismissal be entered without prejudice, meaning that Feliz is not estopped from bringing a new complaint (unless barred from doing so by the statute of limitations), Dr. MacNeill's involvement in the instant litigation is forever precluded. Moreover, it is in the interest of all parties, including the court, that the appeal now be resolved. The case is stayed pending a decision of the Massachusetts Medical Malpractice Tribunal. Should the Court of Appeals disagree with this court, there will be sufficient time to bring Dr. MacNeill fully into the case before it is tried. *But see Cortes–Rivera v. Dep't of Corr. & Rehab.*, 626 F.3d 21, 25 (1st Cir.2010) ("Only in 'rare cases' have we found that a district court abused its discretion in refusing to grant an extension of time.").

## CONCLUSION

For the foregoing reasons, the court *REAFFIRMS* its March 31, 2010 dismissal for failure to effect service. The court further *REAFFIRMS* its June 18, 2010 entry of separate and final judgment for the reasons set out in this Report. Finally, the court *DECLINES* to act on the improperly filed August 10, 2010 motion to vacate.[7]

---

**6.** Feliz's attempt to serve Dr. MacNeill in Ireland by certified mail was in contravention of the Hague Service Convention and therefore unavailing. *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699, 108 S.Ct. 2104.

**7.** To be absolutely clear, Feliz did not then, nor has she to date, offered any showing of good cause for the fifteen-month failure to make service.