# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 31, 2012

Lyle W. Cayce
Clerk

No. 11-60736

GLORIA LOZANO,

Plaintiff - Appellant

v.

JULIE BOSDET; JENNIFER PARRY; GLEN PARRY,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A Mississippi citizen brought suit against the driver of a rental car, her passengers, and Enterprise Rent-A-Car for a traffic accident. The defendants who are individuals are foreign nationals, believed to be from Great Britain. Various attempts at service were made, but all failed. After granting two extensions of time, the district court dismissed the suit for lack of service. This circuit has yet to address what timing requirement Rule 4 places on foreign service of process. Today we adopt a flexible due-diligence standard. We also conclude that because Mississippi's statute of limitations likely bars refiling, this suit should not have been dismissed. We REVERSE and REMAND.

No. 11-60736

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an automobile accident in Horn Lake, Mississippi on February 23, 2006.[1] Gloria Lozano was a passenger in a vehicle that was struck by a truck rented from Enterprise and driven by Julie Bosdet.[2] Bosdet was listed on the police accident report as residing in Ontario, Canada, but now is believed to live in England. Her passengers, Jennifer and Glen Parry, are believed to be British citizens living in London, who own or operate a seasonal bed and breakfast in Horn Lake called "Gracepines." The business caters to tourists interested in Elvis Presley, as Horn Lake is a short distance from Memphis where the Mississippi native moved as a teenager and would find some musical success.

Lozano filed suit on February 23, 2009, in the Circuit Court of DeSoto County, Mississippi. The court clerk issued a summons for each defendant. Mail service under the Mississippi Rules of Civil Procedure was attempted. Enterprise then removed to federal court on March 9. The district court later granted Enterprise summary judgment. It found that Bosdet's liability could not run to the company because the rental contract was only with Jennifer Parry, who had not designated Bosdet as an authorized driver.

Lozano hired a private process server who communicated with the manager of the Parrys' business on June 6, 2009. The manager indicated that the Parrys would return to Mississippi from Great Britain that August. As to Bosdet, Lozano attempted service by restricted delivery mail at the Canadian address. All these efforts were within 120 days of the complaint's filing, which

---

[1] These facts are drawn from the complaint and the plaintiff's motions concerning service in the district court. They are taken as true. *See D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546-47 (5th Cir. 1985).

[2] For clarity we refer to the two corporate defendants, Enterprise Rent-A-Car (a Missouri corporation) and Enterprise Rent-A-Car of Tennessee, collectively as "Enterprise."

No. 11-60736

is a time period relevant for service. *See* Fed. R. Civ. P. 4(m). Whether it is relevant in the context of these facts is the issue in this case.

At the end of that period, on June 23, 2009, Lozano moved for and received an additional 120 days until November 17, 2009.[3] The deadline passed, and the clerk of court notified Lozano that service was incomplete, prompting a second motion for additional time. Enterprise was the only defendant to have made an appearance. It objected, prompting the magistrate judge to grant only an additional 30 days, as opposed to the 120 requested, as well as to state a reluctance to grant further extensions.

On the last day of the extension, Lozano sought more time. She explained that steps were underway to accomplish service according to Rule 4's provisions for service of process outside the United States. *See* Fed. R. Civ. P. 4(f)(1). Finding Enterprise's objections to additional time to be valid, the district court dismissed the suit. Yet, instead of dismissing with prejudice as the defendants requested, the late Judge Pepper deemed it appropriate to "confine [his] Order to a dismissal without prejudice." Lozano appeals that disposition. Her notice of appeal also challenged the grant of summary judgment to Enterprise. Later, though, we granted Lozano's subsequent motion to dismiss Enterprise from the appeal.

## DISCUSSION

Review is *de novo* for the threshold issue in this case because it concerns the interpretation of a Federal Rule of Civil Procedure. *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998). A failure to comply with Rule 4(m)'s time requirement authorizes a district court to dismiss an action without prejudice, except upon a showing of good cause. *See Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008). After determining the parameters

---

[3] In this and her subsequent motions, Lozano preserved the argument we analyze below that Rule 4 did not impose the ordinary 120-day timeline in the case of foreign service.

No. 11-60736

of Rule 4, in Part II of the opinion, we address the district court's dismissal of Lozano's action.

## I.    *Foreign Service under Rule 4(f)*

The Hague Convention is a 1965 multinational treaty that sought to "simplify and expedite international service of process." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002). The federal rules, though, did not expressly validate this means of service until 1993, when Federal Rule of Civil Procedure 4(f) in its present form came into effect. *See* David D. Siegel, Practice Commentary on Fed. R. Civ. P. 4, C4-24, reprinted at 28 U.S.C.A. Fed. R. Civ. P.4 at 172 (West 2008).[4] Rule 4(f) provides that an individual defendant

> may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . .

An example of another "internationally agreed means" is the Inter-American Convention on Letters Rogatory. *See generally Kreimerman v. Casa*

---

[4] The prior rule only discussed service as "permitted by foreign law, as directed by a foreign authority pursuant to letter rogatory [(a letter of request between courts)], by delivery to an individual personally or to an appropriate corporate representative, by mail, or as directed by court order." Gary B. Born & Andrew N. Vollmer, *The Effect of the Revised Federal Rules of Civil Procedure on Personal Jurisdiction, Service and Discovery in International Cases*, 150 F.R.D. 221, 236 (1993). A form of each of these methods can be found in subsections (2)(A)-(C) & (3) of today's Rule 4(f).

No. 11-60736

*Veerkamp*, *S.A. de C.V.*, 22 F.3d 634, 636 (5th Cir. 1994).  Rule 4 also contains a time limit for service:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).

The final sentence makes clear that the 120-day requirement does not apply to service of individuals abroad such as under the Hague Convention, or service of a foreign state under subsection (j)(1).  *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1134 (3d ed. 2008).  As a result, one circuit has indicated that when the defendants are foreign, an unlimited window-of-opportunity for service under Rule 4(f) exists.  *Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991) (per curiam).[5]

Rather differently, the Second Circuit only allows plaintiffs to avoid the 120-day period if they "attempt to serve the defendant in the foreign country" within that time.  *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005); *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985).  We decline to require this approach for two reasons.  First, to do so would effect a rewrite of Rule 4.  The rule states that "subdivision (m) does not apply to service in a foreign country," not that a litigant has 120 days in which to initiate foreign service.  *Cf. Lucas*, 936 F.2d at 432.

Second, that interpretation would make it difficult for plaintiffs to use the less costly and potentially more efficient methods of serving foreign defendants.

---

[5] *See also Rudolph v. UT Starcom, Inc.*, No. 07-04578, 2009 WL 248370, at *3 & n.1. (N.D. Cal. Feb. 2, 2009) (following *Lucas,* and explaining that Rule 4(j) originally contained the limitation now expressed in subsection (m)).

No. 11-60736

One such example is Rule 4(d). That subdivision permits the use of the mail to reach individuals and corporations outside the United States who fall under Rule 4(f). *See* Fed. R. Civ. P. 4(d), (h); Born & Vollmer, *Service and Discovery*, 150 F.R.D. at 232-34; Wright & Miller, *supra,* § 1134. Moreover, "very often service abroad [will] prove[] unnecessary because the foreign defendant has a local presence or a local agent for service." Siegel, Practice Commentary, C4-24, at 174.[6]

Our conclusion that the rules do not require immediate resort to the Hague Convention or other international methods does not, however, lead us to agree with the Ninth Circuit that unlimited time exists. *Lucas*, 936 F.2d at 432. "[M]ost courts faced with a challenge to the timeliness of foreign service have applied a 'flexible due diligence' standard to determine whether the delay should be excused." 1 Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* 60 (2012 ed.). This view has been endorsed by the Seventh Circuit, by the First Circuit in an opinion authored by retired Justice Souter, as well as by many district courts. *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005); *Feliz v. MacNeill*, Nos. 10-1549, 11-1308, 2012 WL 3590807, at *3 (1st Cir. Aug. 22, 2012).[7] Judging it the most sound interpretation, we expressly adopt it.

Following Supreme Court guidance, this court has recognized "that statutory interpretation is a 'holistic endeavor.'" *United States v. Johnson*, 632 F.3d 912, 923 (5th Cir. 2011) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). We applied this maxim

---

[6] *See* Fed. R. Civ. P. 4(e); *Burnham v. Superior Court*, 495 U.S. 604 (1990) (holding that personal service of foreign individuals satisfies due process).

[7] *See, e.g.*, *Feliz v. United States*, 272 F.R.D. 299, 301 (D. Mass. 2011) (First Circuit); *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 308-09 (D.S.D. 2009) (Eighth Circuit); *Lewis v. Vollmer of Am.*, No. 05-1632, 2007 WL 1545661, at *1-2 (W.D. Pa. May 25, 2007) (Third Circuit).

in the class-action context to discern the meaning of Rule 23(b)(2). *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). We determined that Rule 23's underlying "principles and assumptions," along with a comparison of subparts (1), (2), and (3), gave "substance" to (b)(2)'s literal terms. *Id.* at 412-15. So too here. We have already discussed that Rule 4 contemplates other avenues for reaching foreign defendants. *See* Fed. R. Civ. P. 4(d), (e). Those options are subject to the 120-day time limit imposed by Rule 4(f). Another manner of reaching the same defendants is exempted, namely service abroad through an internationally agreed means. Given the mandatory requirement to dismiss for untimely service under the other subparts of Rule 4, we conclude that when subpart (f) applies, a district court is not "left helpless when it wants to move a case along." *O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000). We also agree that the ability of the court to dismiss an action for failure to prosecute under Rule 41(b) strengthens the interpretation of Rule 4 that we adopt today. *See id.*

Because "district courts need to be able to control their dockets," Rule 4(f) authorizes a without-prejudice dismissal when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service. *Nylok*, 396 F.3d at 807. Though we do not insist that foreign service always be the first step, or that it be attempted within the first 120 days, in some cases that will be the only reasonable course. Good faith and reasonable dispatch are the proper yardsticks.[8]

This appeal does not call on us to decide whether a without-prejudice dismissal would have been warranted in this case under the flexible due

---

[8] We understand this principle of reasonableness, not a rigid rule, to have been what the Seventh Circuit meant when it wrote that when "a plaintiff made no attempt to begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim." *Nylok*, 396 F.3d at 807.

No. 11-60736

diligence standard. That is so, because a more exacting standard of review than is usual applies to this dismissal. It is to that issue we now turn.

## II.     *Dismissal of Lozano's Suit*

When "the applicable statute of limitations likely bars future litigation," we review a district court's dismissal under Rule 4(m) by applying the standard applicable to a with-prejudice dismissal. *Millan*, 546 F.3d at 326. Lozano is suing the foreign defendants for the tort of negligence, which carries a three-year statute of limitations. *Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923, 926 (Miss. 2006). She filed suit precisely three years after the accident, on February 23, 2009. Thus, a new suit would be susceptible to this affirmative defense were it to be raised. *See id.* at 926-27. In light of this likely legal bar to suit, we find that the rule of *Millan* applies.

Judge Pepper correctly recognized that the with-prejudice dismissal that Enterprise requested for the claims against Bosdet and the Parrys was too severe a sanction. Dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980). These dismissals should be in the interest of justice; they require "a clear record of delay or contumacious conduct by the plaintiff." *Millan*, 546 F.3d at 326 (quotation marks and citation omitted). We have generally only affirmed them when the delay: (1) was caused by the plaintiff himself, as opposed to by counsel; (2) resulted in actual prejudice to the defendants; or (3) was caused by intentional conduct. *Id.*

There is no record of contumacious conduct by Lozano. Her attorney can be faulted for waiting until notified by the court after the first extension of time for service elapsed. Not only is there no indication Lozano was personally to blame, but this fact is insufficient in another respect. "[I]t is not a party's negligence – regardless of how careless, inconsiderate, or understandably

8

exasperating – that makes conduct contumacious; instead, it is the 'stubborn resistance to authority' which justifies a dismissal with prejudice." *Id.* at 327. (quotation marks and citation omitted). Lozano demonstrated signs of good faith in her escalating efforts to serve (mail, personal service, and now the Hague mechanism) and with her willingness to move for additional time "out of caution," despite correctly maintaining that Rule 4(m)'s time limit did not apply.

We perceive no evidence of intentional delay or actual prejudice. The district court faulted Lozano for not pursuing Hague service until her third request for time. As already discussed, district courts are free to consider that as one factor concerning whether plaintiffs demonstrate diligence in attempting service. The facts as alleged indicate that the Parrys have actual knowledge of the suit. In February 2010, after the process-server visited Gracepines, Glen Parry telephoned the server seeking information about the lawsuit. Prejudice is thus not a concern as to them, and Lozano avers that they have a social relationship with the driver, Bosdet.

Several reasonable efforts have been made to reach Bosdet as well. At present, Hague Convention service is underway in Great Britain. Plaintiff's counsel, a local Mississippi practitioner, has hired a firm specializing in foreign service and has taken "affirmative steps" to transmit the documents through the British Central Authority, a valid option under the Convention. *See* Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters arts. 2-6, Nov. 15, 1965, 20 U.S.T. 361. Counsel for Lozano has also expressed willingness to retain a London attorney to effectuate personal service should difficulties arise with the Central Authority. *Cf. Nylok*, 396 F.3d at 807.

Lozano first attempted to serve Bosdet at the Canadian address listed on the police report. That mail was returned before the initial 120 days elapsed. In her first request for time, Lozano explained her intention to subpoena the

Horn Lake Police Department for "any additional information regarding the home address of Defendant Julie Bosdet." Later, Lozano's counsel learned from the department that Bosdet lived in England, not Ontario, Canada.

All these considerations lead us to conclude that a litigation-ending dismissal with prejudice at this time is not in the interest of justice for Lozano's suit. The judgment of the district court is REVERSED and REMANDED, subject to that court's oversight and ultimate determination of whether or when to dismiss the case for failure to accomplish service. That decision should be informed by the flexible due diligence standard announced today.