# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40541

JOHN A. WALKER,

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

TRANSFRONTERA CV DE SA,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:13-CV-118

Before JOLLY, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

After John Walker's counsel failed to respond to a magistrate judge's orders requesting a status update regarding efforts to serve process on the defendant, the district court dismissed without prejudice the underlying complaint for want of prosecution. Five months later—after the statute of limitations had run on Walker's claim—Walker's counsel filed a Rule 60(b) motion for relief from the order of dismissal, which the district court denied.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40541

Walker then filed a Rule 59(e) motion requesting that the district court reconsider its denial of his Rule 60(b) motion. That motion was also denied. We AFFIRM.

I.

On July 12, 2012, John Walker sustained injuries when his vehicle was rear-ended by a semi-trailer truck owned and operated by Transfrontera SA de CV, a Mexican corporation doing business in the United States. Asserting diversity jurisdiction under 28 U.S.C. § 1332, Walker filed a complaint against Transfrontera in the United States District Court for the Southern District of Texas on July 19, 2013. Walker's counsel, Paul Sadler, mailed the summons to serve process on Transfrontera's designated agent, Jeffrey Fultz. Shortly thereafter, Fultz contacted Sadler to inform him that he was not the defendant's designated agent. Sadler then filed an amended complaint on Walker's behalf changing only the designated agent for service of process. Service of process was attempted again but failed. On October 14, 2013, the service form was returned "unexecuted" with a notation that "the address listed on the summons is a mailbox rental located within San Borns/Bravo insurance Agency."

In the meantime, Walker's counsel had been in contact with Transfrontera's insurer, Gramercy Insurance Company. Gramercy requested Walker provide a statement, medical records, and any additional liability information. On November 4, 2013, a claims agent for NTA, Inc., a company contracted to handle claims for the Texas Property and Casualty Insurance Guaranty Association ("TPCIGA"), notified Walker's counsel that Walker's claim had been forwarded to the TPCIGA. On November 22, 2013, the claims agent informed Walker's counsel by email that Gramercy was in liquidation and that "[n]o litigation can commence or continue against any Gramercy policyholder." Indeed because of Gramercy's insolvency, on August 26, 2013, a

No. 15-40541

Texas state court had placed Gramercy into liquidation pursuant to Texas Insurance Code § 443.057. With respect to the stay, the state court wrote:

> An automatic stay remains in effect with respect to actions against [Gramercy] or its property pursuant to TEX. INS. CODE § 443.008(c). In accordance with TEX. INS. CODE §443.008(f), such stay of actions against Defendant is in effect for the duration of this proceeding, and the stay of actions against Defendant's property is in effect for as long as the property belongs to the receivership estate.

Neither the state court's order nor § 443.008 indicated that the stay of proceedings on claims against Gramercy also stayed proceedings against Gramercy policy holders such as Transfrontera. *See* TEX. INS. CODE § 443.008. Nonetheless, despite having failed to perfect service of process, Walker's counsel did not keep apprised of any district court orders in relation to the underlying action against Transfrontera.

On November 6, 2013, when the 120-day time limit from the filing of the complaint to serve Transfrontera was soon to expire, the federal magistrate judge entered an order stating: "Plaintiff is hereby ORDERED to file a report advising the Court as to (1) what efforts have been made to effect service, and (2) the overall status of this case. Plaintiff's report must be filed no later than November 13, 2013." *See* FED. R. CIV. P. 4(m). The magistrate judge received no response and entered a second order on November 15, 2013, again directing that the plaintiff file the report requested in the first order and for the plaintiff to show cause "why he should not be sanctioned for failure to comply with the Court's order, and why the [magistrate] should not recommend to the District Judge that this case be dismissed for want of prosecution." On March 7, 2014, after still not receiving a response from Walker or Walker's counsel, the district court dismissed Walker's claim without prejudice for want of prosecution. Subsequently, the two-year statute of limitations on Walker's tort claim against Transfrontera ran on July 12, 2014. *See* TEX. CIV. PRAC. & REM. CODE

No. 15-40541

§ 16.003(a) ("[A] person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues.").

On August 15, 2014, a TPCIGA claims representative notified Sadler that the district court had dismissed Walker's complaint against Transfrontera, and since the statute of limitations had run, the TPCIGA closed Walker's file with respect to his claim against Gramercy. This is the first time Walker's counsel became aware of the district court's dismissal. Walker then filed a Rule 60(b) motion with the district court seeking relief from the order of dismissal. In the motion, Sadler explained that he had not complied with the magistrate judge's orders because Sadler and his law firm failed to provide their updated email addresses to the Southern District of Texas and therefore, did not receive the notices of the orders issued in November 2013. The district court denied the Rule 60(b) motion. Walker then filed a Rule 59(e) motion requesting that the district court "reconsider" its denial of his Rule 60(b) motion, which the district court denied.

Walker now appeals the district court's (1) order of dismissal for want of prosecution, (2) denial of his Rule 60(b) motion, and (3) denial of his Rule 59(e) motion for reconsideration.

II.

Walker urges this Court to apply the more "exacting" review our court applies to dismissals without prejudice for want of prosecution when the statute of limitations has run. *See, e.g., Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014); *Berry v. Cigna/RSI-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992). But we do not have jurisdiction to consider an appeal from the order of dismissal itself.

To confer jurisdiction on this Court to review the order of dismissal, Walker's notice of appeal must have been filed no later than thirty days after

No. 15-40541

March 7, 2014, the date the district court entered the order of dismissal.[1] Walker's notice of appeal was not filed until April 8, 2015, approximately one year after the deadline for filing the notice. While Walker's Rule 60(b) motion could have tolled the period for which he had time to file the notice of appeal if it was filed within twenty-eight days of the order of dismissal, Walker's Rule 60(b) motion was not filed until August 21, 2014, over five months after the order of dismissal was entered. FED. R. APP. P. 4(a)(4)(A)(vi). The district court denied the Rule 60(b) motion on September 19, 2014, and Walker's timely Rule 59(e) motion filed on September 29, 2014, tolled the period for Walker to file a notice of appeal from the 60(b) denial.[2] The district court denied the Rule 59(e) motion on April 8, 2015, and Walker's notice of appeal was filed that same day. We accordingly have jurisdiction to consider on appeal only the district court's denial of Walker's Rule 59(e) and Rule 60(b) motions. We do not have jurisdiction over an appeal of the order of dismissal. *See Bowles v. Russel*, 551 U.S. 205, 213 (2007).

This distinction is material to our standard of review. *See Williams v. Brown & Root, Inc.*, 828 F.2d 325, 328-29 (5th Cir. 1987) (distinguishing between the standards of review for 60(b) denials and dismissals for want of prosecution without prejudice after a claim becomes time-barred). The district court enjoys a wealth of discretion when assessing a Rule 60(b) motion:

---

[1] 28 U.S.C. § 2107(a) ("Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree."); *Bowles v. Russel*, 551 U.S. 205, 209 (2007) ("This Court has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional'" (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982) (per curiam))).

[2] FED. R. APP. P. 4(a)(4)(A)(vi) ("If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: . . . (iv) to alter or amend the judgment under Rule 59."); FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

No. 15-40541

> Motions under Rule 60(b) are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion. It is not enough that the granting of relief might have been permissible, or even warranted denial must have been so unwarranted as to constitute an abuse of discretion. Nevertheless, the discretion of the district court is not unbounded, and must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice.[3]

Additionally, Walker seeks to alter or amend the district court's judgment denying his Rule 60(b) motion under his Rule 59(e) motion. This Court reviews the denial of a Rule 59(e) motion for an abuse of discretion.[4]

---

[3] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (citations omitted). In *Seven Elves* this Court identified eight factors that "should inform the district court's consideration of a motion under Rule 60(b)." *Id.* These factors include:

> (1) That final judgments should not lightly be disturbed;
>
> (2) that the Rule 60(b) motion is not to be used as a substitute for appeal;
>
> (3) that the rule should be liberally construed in order to achieve substantial justice;
>
> (4) whether the motion was made within a reasonable time;
>
> (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense;
>
> (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense;
>
> (7) whether there are intervening equities that would make it inequitable to grant relief; and
>
> (8) any other factors relevant to the justice of the judgment under attack.

*Id.* This Court has also made it clear that "[t]hese factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments." *Id.* *Accord Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("The district court has great latitude in making a Rule 60(b) decision because that decision 'is discretion piled on discretion.'"); *Herrera v. Computer Sciences Corp.*, 208 F.3d 1007, at *1 (5th Cir. 2000) ("The decision under Rule 60(b) is discretion piled on discretion, and . . . such doubly discretionary decisions stand unless the judge was very far off base-if the judge relied on forbidden factors or omitted to consider some important relevant factor.").

[4] *See Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 181 (5th Cir. 2012) ("We also review a denial of a Rule 59(e) motion to amend a judgment for an abuse of discretion.");

No. 15-40541

III.

In his motions for relief from judgment, Walker relied upon Rule 60(b)(l), (3), and (6), as well as Rule 59(e). The district court denied relief on each of these grounds.

A.

Rule 60(b)(l) allows for relief from judgment for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). A district court does not abuse its discretion by denying a Rule 60(b) motion "when the proffered justification for relief is the 'inadvertent mistake' of counsel." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356-57 (5th Cir. 1993) (quoting *Williams*, 828 F.2d at 329). "Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985) (quoting 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2858)).

In *Edward H. Bohlin Co.*, the plaintiff commenced a lawsuit against multiple defendants for copyright infringement. *Edward H. Bohlin Co.*, 6 F.3d at 352. The defendants filed a motion to dismiss to which the plaintiff failed to respond because it misunderstood statements the district judge made during a hearing and believed that its response was due at a later time than it was in fact due. *Id.* at 352-55. The district court granted the defendants' motion to dismiss due in large part to the plaintiff's "failure to respond to the subject motion in a timely manner under the local rules." *Id.* The plaintiff then filed a motion asserting grounds for reconsideration and relief from judgment under Rules 59 and 60, both of which the district court denied. *Id.* In affirming the

---

*Azubuko v. Catherine H. Gallagher Co-op. Hous.*, 476 F. App'x 3, 4 (5th Cir. 2012) (per curiam) ("[Plaintiff]'s appeal of the district court's denial of his Rule 59(e) motion can bring up for review both the Rule 59(e) ruling and the underlying judgment—in this case, the denial of Rule 60(b) relief.").

district court's denial of Rule 60(b)(l) relief, this Court explained that "[a] party has a duty of diligence to inquire about the status of a case; Rule 60(b) relief will only be afforded in 'unique circumstances.'" *Id.* at 357 (quoting *Pryor*, 769 F.2d at 287).  Even further, "a court would abuse its discretion if it were to reopen a case under Rule 60(b)(l) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court."  *Id.*  The plaintiff's incorrect interpretation of the district court's statements did not justify relief under Rule 60(b)(l), especially because the plaintiff "failed to inquire as to the status" of the case.  *Id.*

The facts of the present case are analogous.  Walker's counsel now argues that his failure to update the email address on file with the Southern District of Texas is a mistake warranting Rule 60(b)(l) relief for Walker.  Because the email address was not updated, Walker's counsel explains, counsel was unaware of the magistrate judge's two November 2013 orders requesting an explanation for why process had not been served and the district judge's March 2014 order of dismissal for want of prosecution.  But despite Walker's counsel's characterization of this oversight as a "simple clerical mistake," counsel did not fulfill his "duty of diligence to inquire about the status of a case."  *Id.*  As the district court noted, Walker's counsel "had the responsibility to routinely check the docket for activity, regardless of whether he received electronic notices about updates," and counsel "did not even realize that the pending matter had been dismissed until more than five months after the entry of dismissal."

Walker's counsel's explanation for why he did not stay apprised of the status of the case against Transfrontera was because a state court had issued a stay of all proceedings against Gramercy.  The district court rejected this excuse because the "instant case was not filed against Gramercy," "[i]t was

filed before the state court injunction was issued, and it made no reference to Gramercy." The district court "had nothing to indicate that Gramercy . . . had any involvement with the case." Walker's counsel's belief that a state court's stay of proceedings against Gramercy, which did not purport to enjoin proceedings against Transfrontera or any Gramercy policy holder, would automatically enjoin the district court from taking actions in Walker's case against Transfrontera or toll Rule 4(m)'s 120-day time limit for serving process is unjustifiable.

Nonetheless, Walker's counsel argues that because Texas law does not have a direct-action statute permitting suit to be brought directly against an insurer, rather than against the insured, Walker could not have named Gramercy in his complaint. But this argument is unavailing. To be sure, the general rule in Texas "is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *See In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014) (per curiam) (quoting *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997) (per curiam)). But this rule undercuts Walker's position. The fact that Texas does not have a direct-action statute means that Walker would only have an actionable claim against Gramercy after he obtained a judgment against or settlement from Transfrontera.[5] The fact that Transfrontera was insured under a policy issued by Gramercy would have been

---

[5] *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992) ("[A] third party's right of action against the insurer does not arise until he has secured . . . an agreement or a judgment against the insured." (quoting *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265-66 (Tex. 1969))); *State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (per curiam) ("In [*Murray*], we held that a party injured by the insured is a third party beneficiary of a liability insurance policy. However, he cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party.").

irrelevant to establishing Transfrontera's liability.[6]   Accordingly, Walker's cause of action against Transfrontera was not a proceeding against Gramercy that would have been stayed by the state court's order.  Walker's counsel should not have assumed that he could ignore the docket of his client's case for months without consequence.

Next, Walker's counsel urges that if Walker had taken any steps to litigate against Transfrontera, including further attempts to serve process, he would have been acting in violation of the state court's stay order.  To that end, he also urges that the district court acted in violation of the stay order.  But, as discussed above, proceedings against a tortfeasor and proceedings against the tortfeasor's insurer are distinct in Texas.  The state court's stay was limited to "actions against [Gramercy] or its property," and did not pertain to actions against Gramercy's policy holders.  Nor does the provision of the Texas Insurance Code that provides for an automatic stay of all proceedings against an insolvent insurer, cited by the state court order, mention actions against policy holders.[7]  Walker's counsel appears to have relied on an interpretation

---

[6] *Murray*, 437 S.W.2d at 266 ("[I]t is ordinarily immaterial [in a tort action] whether one or all of the parties involved in an automobile collision carry indemnity insurance." (quoting *Ex Parte Jones*, 331 S.W.2d 202, 204 (Tex. 1960))).

[7] TEX. INS. CODE § 443.00B(c) provides:

[T]he commencement of a delinquency proceeding under this chapter operates as a stay, applicable to all persons, of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the insurer*, including an arbitration proceeding, that was or could have been commenced before the commencement of the delinquency proceeding under this chapter, or to recover a claim *against the insurer* that arose before the commencement of the delinquency proceeding under this chapter;

(2) the enforcement *against the insurer or against property of the insurer* of a judgment obtained before the commencement of the delinquency proceeding under this chapter;

of the state court's stay order by Misti Jenkins, a claims supervisor at NTA, Inc., who stated in an email to Sadler's legal assistant that "[n]o litigation can commence or continue against any Gramercy policy holder or anyone considered an omnibus insured at this time." But counsel could not have relied on Jenkins's interpretation of the stay order to cease monitoring Walker's claim in federal court. Both orders by the magistrate judge requesting a report on the status of the case *predated* Jenkins's email. Even assuming, *arguendo*, Jenkins's interpretation of the stay order were correct, as the district court noted, "it clearly could not violate the stay order for Plaintiff to . . . advise the Court of the liquidation proceedings." *See Edward H. Bohlin Co.*, 6 F.3d at 356-57.

Therefore, the district court did not abuse its discretion in denying Rule 60(b)(1) relief.

## B.

Walker also pursued relief under Rule 60(b)(3), which allows for relief from judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). "A party making a Rule 60(b)(3) motion must establish (1) that the

---

(3) any act to obtain or retain possession of property *of the insurer* or of property from the insurer or to exercise control over property or records *of the insurer*;

(4) any act to create, perfect, or enforce any lien against property *of the insurer*;

(5) any act to collect, assess, or recover a claim *against the insurer* that arose before the commencement of a delinquency proceeding under this chapter;

(6) the commencement or continuation of an action proceeding *against a reinsurer of the insurer*, by the holder of a claim against the insurer, seeking reinsurance recoveries that are contractually due to the insurer; and

(7) except as provided by Subsection(e)(l), the commencement or continuation of an action or proceeding by a governmental unit to terminate or revoke an insurance license. (emphasis added).

adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995)). Walker has the burden of proving misconduct by clear and convincing evidence. *Id.* (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)).

Walker's counsel asserts that representations were made by Gramercy, NTA, and the TPCIGA, that a stay was in place regarding proceedings against Gramercy, that Walker's claim would be fairly evaluated within the TPCIGA structure, and that "counsel need only furnish requisite information to the Fund for it to be resolved." The district court found that none of these communications were "misconduct in any sense of the term."

After Gramercy's liquidation proceeding commenced, the TPCIGA received the insurance claim Walker had filed with Gramercy. The communications from the TPCIGA and NTA, TPCIGA's claims agent, cannot support Rule 60(b)(3) relief. For one, there is no evidence in the record that indicates that any communication to Walker's counsel was fraudulent. To the extent Walker's counsel relied on the statement by Jenkins that the stay applied to proceedings against Gramercy's policy holders, that statement did not prevent Walker from responding to the federal court's order. Even if Jenkins's statement, which was sent after the magistrate judge had issued two orders requesting a report, could be considered a material misrepresentation, counsel could not disregard the docket of Walker's federal case for the ensuing eight to nine months. *See Edward H. Bohlin Co.*, 6 F.3d at 356-57. The alleged misrepresentation did not result in the dismissal of Walker's complaint.

Walker's counsel also asserts that Transfrontera made material representations by failing to designate properly a registered agent in Texas as

required by state law.  Indeed, Transfrontera's failure to designate a registered agent was improper under Texas law.  *See* TEX. BUS. ORGS. CODE §§ 5.201, 9.001.  But again, this failure does not create a justification for Walker's counsel to ignore the docket of his client's case and fail to keep the district court informed about the difficulties of serving process on Transfrontera.  Moreover, as the district court noted, Transfrontera's failure to designate a registered agent in Texas did not prevent Walker from presenting his case because process could have been served on Transfrontera in Mexico in accordance with Rule 4(f).[8]  Walker's counsel points out, correctly, that Rule 4(m)'s 120-day time limit, by its own terms, does not apply to service of process in a foreign country.[9]  But this does not mean that the time to serve process in a foreign country is unlimited.[10]  "Rule 4(f) authorizes a without prejudice dismissal when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service."  *See Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012).  Here, Walker's complaint was filed on July 19, 2013.  The district court did not dismiss the complaint until March 7, 2014, 231 days later and five months after the magistrate judge ordered Walker's counsel to provide an update to the court, with no response from Walker or Walker's counsel.  Thus, it is clear that neither Walker nor Walker's

---

[8] FED. R. CIV. P. 4(f) (providing rules for "Serving an Individual in a Foreign Country"); FED. R. CIV. P. 4(h) (allowing for service of a corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery"); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988) (describing methods of international service of process under the Hague Service Convention); *see also* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361; Hague Conference on Private International Law, *Status Table*, www.hcch.net/index_en.php?act=conventions.status&cid=l 7 (listing current member nations to the Hague Service Convention, including Mexico).

[9] FED. R. CIV. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(l)."); *see also Lozano v. Bosdet*, 693 F.3d 485, 488 (5th Cir. 2012).

[10] *See Lozano*, 693 F.3d at 488-89.

No. 15-40541

counsel acted with the "reasonable diligence . . . good faith . . . [or] reasonable dispatch" required by Rule 4(f).[11]  *Id.*

Therefore, the district court did not abuse its discretion in denying Walker Rule 60(b)(3) relief.

C.

Walker seeks relief under Rule 60(b)(6), a catch-all provision providing grounds for "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6).  In support of the Rule 60(b)(6) motion, Walker's counsel repeats the argument that the district court was in violation of the state court's stay of proceedings against Gramercy.  But as discussed above, nothing in the state court order purported to apply to Transfrontera or Gramercy policy holders, and even if it did, it would not excuse counsel's duty to stay apprised or keep the district court informed of the status of his client's case.  *See Edward H. Bohlin Co.*, 6 F.3d at 356-57.

When the district court dismissed Walker's complaint without prejudice on March 7, 2014, the statute of limitations would not run on Walker's cause of action for another 127 days.  Had counsel checked the docket of the case within that four-month period, Walker's complaint could have been refiled.

Therefore, the district court did not abuse its discretion in denying Walker Rule 60(b)(6) relief.

D.

Finally, Walker asserts that under Rule 59, the district court should have "reconsider[ed]" its final judgment concerning his Rule 60(b) motion. Indeed, a district court may "alter or amend a judgment" under Rule 59(e).  *See* FED. R. CIV. P. 59(e).  To reverse the district court's dismissal of Walker's Rule

---

[11] *See also Lozano*, 693 F.3d at n.8 ("[If, for example,] 'a plaintiff made no attempt to begin the process of foreign service within 120 days, it might be proper for a court to dismiss the claim.'" (quoting *Nylok Corp.*, 396 F.3d at 807)).

14

59(e) motion to reconsider, this Court would have to find that the district court abused its discretion in dismissing Walker's Rule 59(e) motion *in addition to* abusing its discretion in dismissing his Rule 60(b) motion. In support of his Rule 59(e) motion, however, Walker's counsel repeats the argument that the district court was in violation of the state court's stay of proceedings against Gramercy. Thus, Walker's Rule 59(e) motion did not add anything new to the Rule 60(b) considerations before the district court or this Court. As addressed above, the district court did not abuse its discretion in denying Walker Rule 60(b) relief. Therefore, considering Walker's failure to provide any additional evidence or legal basis that supports Rule 59(e) relief, the district court was necessarily within its discretion to deny Walker's Rule 59(e) claim as well.

Therefore, the district court did not abuse its discretion in denying Walker Rule 59(e) relief.

IV.

The judgment of the district court is

AFFIRMED.